THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANDREW G. SANDERS, Defendant-Appellant.

Fifth District No. 78-529

Opinion filed January 11, 1980.

Richard J. Wilson and Don L. Johnson, both of State Appellate Defender's Office, of Springfield, for appellant.

William A. Schuwerk, Jr., State's Attorney, of Chester (Raymond F. Buckley, Jr., and William S. Zale, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mme JUSTICE SPOMER delivered the opinion of the court:

This appeal arises from a retrial of the defendant, Andrew Sanders. He was charged in the circuit court of Randolph County with rape, aggravated kidnapping, deviate sexual assault, and aggravated assault. Following a jury trial, defendant was found guilty as charged. On appeal, this court found that defendant was deprived of a fair trial, reversed the judgment, and remanded the cause for a new trial. (*People v. Sanders* (1978), 59 Ill. App. 3d 650, 375 N.E.2d 921.) Upon retrial, defendant was again found guilty as charged, and sentenced to 6 to 18 years each for his convictions for rape, aggravated kidnapping, and deviate sexual assault and 364 days for aggravated assault, all sentences to run concurrently. From the judgment of conviction, defendant again appeals.

The issues raised on appeal require a recitation of the evidence presented at the second trial. The complaining witness testified that on February 3, 1977, at about 12:30 a.m., she heard someone knocking on her trailer door. She turned on the porch light, looked out the window, and saw a man she did not know, whom she described as five feet 10 inches tall, with brown, "sort of curlish" hair, and dark-rimmed glasses. He told her he was the brother of Linda Sanders, a co-worker of the victim. The man then forced his way into the trailer, and pointed a rifle at her. She stepped back into the kitchen area and turned on a nearby light. She stated that her assailant was three feet from her, and she could see him clearly. Defendant then forced her out of the trailer and into his pickup truck at gunpoint. The victim described the truck as light-colored, with a dark interior and worn dash, no carpet, and a standard, on-the-floor transmission. She saw a license-applied-for sticker on the right corner of the windshield and on the left, an inspection sticker. Inside the truck the victim saw three more guns and a plaid CPO jacket. The assailant then drove the complainant to a secluded location where he committed various sexual acts by force. During this time he removed a tampon from the witness and threw it out of the truck. Thereafter, he drove the victim to a country bridge and forced her to sit upon a railing, where he aimed a rifle at her and announced his intention to kill her. She begged for her life, and ultimately, defendant acquiesced, although he said he would kill her

if she told anyone of the incident. While driving, the assailant told the witness that he had a wife and a little girl, and that he had been having problems with his wife. When he returned the witness to her trailer, he apologized, then thanked her for "letting him get his head back together."

After her assailant left, the victim telephoned her fiance and told him she had been raped. He testified that she was crying and upset, and fixed the time at 2 a.m. At her insistence, he agreed not to call the police, because she feared for her life. However, on the following day, February 4, 1977, the victim went to the police, related her story, and made a photographic identification of the defendant from a group of photographs.

At the trial, evidence revealed that the defendant is in fact the brother of Linda Sanders. At the time of the crime, he owned a light pickup truck with dark interior, standard-type transmission, and with license-applied-for and inspection stickers on the windshield. He also owned a plaid CPO jacket such as the witness had described. The evidence also showed that upon retracing the route of the truck at the victim's direction, the police saw tracks in the snow made by a vehicle with two snow tires in the back and two regular tires in the front. Defendant's vehicle was equipped with such tires. A tampon was found on the ground near the scene. At trial, the victim positively identified the defendant as her attacker.

When the defendant testified at trial, he pointed out to the jury a scar below his right eye, a scar on the right side of his chin, and a tattoo on his left shoulder, none of which the complaining witness had noted in her descriptions. His ex-wife, who had been married to him at the time of the offense, testified that he had arrived home at 1:30 a.m. on the date of the crime.

The defendant raises several issues on appeal. He first asserts that the trial court erred in permitting the prosecution to amend the aggravated kidnapping count of its information. Count II of the original information charged defendant with "aggravated kidnapping in that the said defendant, in committing the offense of kidnapping, in violation of Illinois Revised Statutes, Chapter 38, Section 10—1(a)1, knowingly and secretly abducted [the complaining witness] at gunpoint from her trailer, against her will, while armed with a dangerous weapon, a rifle, in violation of Illinois Revised Statutes, 1976, Ch. 38, Sec. 10—2(a)5." On remand of the cause, the State filed an amended information, substituting the word "confined" for the word "abducted." The amendment was permitted over the objection of the defendant, who contended that the omission of the word "confined" was a fundamental defect and could not be cured by amendment.

■■ As we noted in *People v. Adams* (1977), 46 Ill. App. 3d 735, 736, 361 N.E.2d 827, 828, the standard used to test the sufficiency of an indictment is whether it is "sufficiently specific to inform the defendant of the offense charged so as to enable him to prepare a defense and to allow pleading the resulting judgment in bar of any future prosecution for the same conduct." A complaint must be read as a whole, and where the statute is cited therein, the statute and the charge are to be read together. (*People v. Baez* (1974), 20 Ill. App. 896, 314 N.E.2d 258.) The charge here refers to the appropriate section of the Criminal Code, and when both are read together, the crime with which defendant was charged is clearly indicated. Furthermore, for a defendant to have "knowingly and secretly abducted" the victim against her will, as originally alleged, he would necessarily have had to confine her. It is also significant that the amendment was made many months prior to trial by leave of court and with defendant's knowledge, and the information was reverified. Defendant relies on the case of *People v. Troutt* (1977), 51 Ill. App. 3d 656, 366 N.E.2d 370. However, the decision in that case turned on the fact that the information was materially amended and was not reverified, neither of which is true in the case at bar. We find that both the original and the amended informations effectively charged a crime, and enabled the defendant to prepare a defense. In addition, the defendant was afforded liberal discovery, and has failed to show any prejudice from the claimed defect. *People v. Garmon* (1974), 19 Ill. App. 3d 192, 311 N.E.2d 299.

■■ ■ The defendant's second contention is that the trial court erred in failing to hold an arraignment on the amended aggravated kidnapping charge. However, defendant did not object to this omission at the trial level, and therefore the issue was waived. (Ill. Rev. Stat. 1977, ch. 38, par. 113—6.) Furthermore, the Supreme Court of Illinois in the case of *People v. Hill* (1959), 17 Ill. 2d 112, 160 N.E.2d 779, has held that the lack of a formal plea does not require that the judgment of conviction be set aside where the record shows without doubt that the case was tried on the assumption that a plea of not guilty had been entered.

The defendant next contends that the trial court erred in permitting the prosecutor to cross-examine defendant's former wife too broadly. At the trial, defendant attempted to prove his alibi by her testimony. She testified that on the night of the offense he returned home at 1:30 a.m. During cross-examination, the state's attorney referred to defendant's release on bail following arrest, and asked, "Isn't it a fact that you and your husband, after he was released from jail, didn't live together for three weeks?" After defense counsel's objection was overruled, the witness answered affirmatively. Defendant asserts that the question was

irrelevant and prejudiced him, creating an inference that the witness believed he was guilty. The State contends that such question on cross-examination was a proper impeachment of defendant's wife's testimony on direct examination.

■■ The proper scope of impeachment on cross-examination was outlined by the Illinois Supreme Court in the case of *People v. Williams* (1977), 66 Ill. 2d 478, 486, 363 N.E.2d 801, 805:

> "Although, as a general rule, cross-examination is limited to the subject matter inquired into on direct examination, the general rule is modified to the extent that 'It is proper on cross-examination to develop all circumstances within the knowledge of the witness which explain, qualify, discredit or destroy his direct testimony although they may incidentally constitute new matter which aids the cross-examiner's case.' "

■ In accord with this guideline, a prosecutor may cross-examine a defense witness solely for the purpose of discrediting and impeaching his testimony (*People v. Jones* (1975), 60 Ill. 2d 300, 305-06, 325 N.E.2d 601, 604), and particularly wide latitude is permitted in questioning the witness' relationship with the defendant. (*People v. Beller* (1977), 54 Ill. App. 3d 1053, 1062, 370 N.E.2d 575, 581.) We find no abuse of discretion or prejudice to the defendant here, particularly in view of the wife's further testimony on redirect that she willingly returned to live with defendant after the three weeks' separation.

■■■ Defendant further asserts that trial court improperly permitted one of the investigating police officers to testify regarding the statements the complaining witness gave to the police, contending that such testimony was hearsay used only to bolster the victim's testimony and inadmissible. However, no objection was made at trial or in defendant's post-trial motion, and the issue was waived. (*People v. Akis* (1976), 63 Ill. 2d 296, 299, 347 N.E.2d 733, 735.) Furthermore, when considered on the merits, it appears that the purpose of the testimony was not to show the truth of the complaining witness' statement, but to show the reason that the police conducted their investigation as they did. Such testimony was not objectionable on the ground that it was hearsay. *People v. Canale* (1972), 52 Ill. 2d 107, 115, 285 N.E.2d 133, 137; *People v. Thomas* (1975), 25 Ill. App. 3d 88, 92, 322 N.E.2d 597, 600.

■■ The defendant finally contends that there was insufficient evidence to identify him as the assailant. The facts belie this contention. The assailant identified himself as the brother of Linda Sanders. During the 45 minutes of the abduction, the victim had ample opportunity to observe her assailant. She identified the defendant's photograph, from a group, as that of the man who attacked her. The description the victim gave to police was relatively consistent with defendant's description. Her description of

his pickup truck was consistent in all particulars with the truck owned by defendant. There is simply no evidence which raises a reasonable doubt of defendant's guilt.

Accordingly, we affirm the judgment of the circuit court of Randolph County.

Affirmed.

KARNS and HARRISON, JJ., concur.