UNITED STATES ex rel. Keith
WHITE, Plaintiff,

v.

Michael O'LEARY, Warden of Stateville Correctional Center, and Neil Hartigan, Attorney General for the State of Illinois, Defendants.

No. 86 C 4012.

United States District Court,
N.D. Illinois, E.D.

Feb. 20, 1987.

Keith Aaron White, pro se.

David E. Bindi, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Keith White ("Petitioner" or "White") petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982), claiming that at his trial improperly admitted hearsay testimony violated his right to confrontation as protected by the Sixth and Fourteenth Amendments to the United States Constitution. For reasons explained below, we deny his petition.[1]

## FACTUAL BACKGROUND

Keith White was brought to trial in state court on December 4, 1984, for the shooting of a Mr. Rodney Townes. (R. 1). A jury convicted White of attempted murder, aggravated battery, and armed violence. (R. 507–510). He was subsequently sentenced by Cook County Circuit Judge Robert L. Sklodowski to ten years imprisonment. (R. 523–524).

According to the trial transcript, the shooting incident took place as follows. On July 4, 1983, Rodney Townes attended a holiday picnic with his fiancee's family, the Sissons. (R. 242). As the family returned home from the picnic, Dexter Sisson noticed his younger brother, Jerry, outside the family apartment, talking to White. (R. 194). Dexter and his mother attempted to convince Jerry to come inside with the rest of the family, but Jerry refused. (R. 195). Approximately one-half hour later, Jerry came into the family apartment, took some clothes, and left. (R. 203). In trying to convince Jerry to come back to the apartment, Dexter followed his brother out into the hallway. (R. 204). There, Dexter confronted White, as well as 18–20 other young men. (R. 290). Dexter testified that he recognized White as "Speedy" and suspected that he was a gang member. (R. 205). White asked Dexter if he "had a problem", and Dexter told White to stay away from the Sisson family. (R. 206–207). A fight ensued between White, Dexter, and at least one other youth. (R. 208). Dexter was beaten, but he managed to escape into the family apartment. (R. 210). Dexter's sister, Debra, who had witnessed the fight, began to scream. (R. 209). Her fiance, Rodney Townes, came into the hallway, where he too confronted White. (R. 295).

---

1. Petitioner has moved for summary judgment. In their response, respondents have stipulated that "all material facts are hereby contained in the trial transcript, and that there is no need for an evidentiary hearing", while simultaneously asking this court to deny petitioner's habeas corpus petition. Because we find that the respondents are entitled to a judgment as a matter of law, assuming petitioner's allegations are true, we will treat respondents' request as a motion for summary judgment. *See Ross v. Franzen*, 777 F.2d 1216, 1222 (7th Cir.1985) (summary judgment appropriate if, resolving factual disputes in favor of a nonmoving party, moving party is nonetheless entitled to judgment as a matter of law).

Words were exchanged between White and Townes, and someone behind White handed him a handgun. (R. 296). White pointed the handgun at Townes, who was standing 10–15 feet away. (R. 297). Townes turned to run back into the apartment, but was shot in the leg before he could get inside. (R. 298). Townes sustained severe damage to his leg. (R. 256, 257).

After the shooting, Detective Mann, a Chicago Police Officer assigned to the Gang Crimes Investigation, Section South, (R. 314, 323) interviewed Dexter Sisson, Debra Sisson and Rodney Townes. (R. 322–323). From these interviews, Detective Mann received a physical description of the assailant, as well as the fact that the Sissons and Townes knew him as "Speedy". (R. 322–323). Mann testified that, based on this information, he was able to identify Keith White as the assailant and arrest him (R. 323) on July 9, 1988 (R. 314, 323). After his arrest, White was identified in a lineup by Dexter Sisson, Debra Sisson and Rodney Townes. (R. 365–366).

At White's trial, Detective Mann not only testified to his personal involvement with this case, but also as to his work with the Gang Crimes Investigation (R. 315). He testified that through his work with this unit (which included reading police reports on suspected gang activities, personal surveillance of gang members, interviews with informants, and interviews with gang members themselves, including the defendant (R. 315), he was familiar with White as "Speedy", the leader of a gang known as the "Moroccan Tribe." It was this information, he testified, which helped him to identify and arrest White for shooting Rodney Townes. (R. 323). The defense objected to this testimony and moved for a mistrial on two grounds: one, that a list of

gang members used by Mann in his testimony had not been provided to the defense during discovery; and, two, that Mann's testimony lacked proper foundation. (R. 336). After allowing the defense attorney, Mr. Gant, to voir dire Mann out of the presence of the jury as to the compilation of the gang membership list and Mann's knowledge of White as a gang leader (R. 330–338), the court denied defendant's motion, ruling that Mann's testimony was admissible for the limited purpose of demonstrating the behavior which led to White's arrest. (R. 373–374).

At the close of the State's case-in-chief, the defendant moved for a directed verdict and renewed the motion for mistrial. Both motions were denied. (R. 373–374). The defense, at the close of all the evidence, moved for a new trial, based on Mann's testimony, and that motion was likewise denied. (R. 517). On appeal, the Appellate Court, First District, upheld the conviction.

### PETITIONER'S CLAIM

■ In his *pro se* petition White raises numerous challenges to his conviction. First, he claims that the admission of that part of Detective Mann's testimony which linked petitioner to the Moroccan Tribe was hearsay, and, as such, violated his Sixth Amendment right to confrontation. Second, he claims that Mann's testimony was improperly offered as expert testimony by the State. Finally, White claims that evidence of past crimes was likewise improperly admitted. We find no merit in the latter two contentions as there is little in the record to support them.[2] We therefore now address the gravamen of the claim, that Mann's testimony regarding petitioner's affiliation with the Moroccan Tribe de-

---

2. The State never offered Detective Mann as an expert witness. The defense attorney referred to him as a "gang crimes specialist" (R. 337), and subsequently, defendant complains that this classification unduly prejudiced the jury. In any event, the trial court specifically stated that Mann was not tendered as an expert witness. (R. 374). We believe that such a statement must have clarified Detective Mann's status.

Further, Detective Mann testified that his familiarity with the Moroccan Tribe began with an arrest of gang members during a raid. This did not constitute admission of evidence of past crimes, because Mann neither stated nor implied that petitioner was present at that raid. (R. 317).

nied the petitioner his Sixth Amendment right to confrontation.

Petitioner claims that Mann's testimony regarding petitioner's affiliation with the Moroccan Tribe constituted hearsay. Hearsay is an out-of-court statement offered to establish the truth of the matter asserted therein. *People v. Hunter*, 124 Ill.App.3d 516, 79 Ill.Dec. 755, 767, 464 N.E.2d 659, 671 (1st Dist.1984); *People v. Rogers*, 81 Ill.2d 571, 44 Ill.Dec. 254, 257, 411 N.E.2d 223, 226 (1980); McCormick, Evidence, 246 at 584 (2d ed. 1972). By allowing Mann to testify regarding information admittedly received from persons not before the court, petitioner contends that his Sixth Amendment right to confrontation has been violated, thus causing him to be improperly imprisoned.

Illinois courts [3] have held that when the testimony of an out-of-court statement is offered, not for the truth therein, but for the limited purpose of explaining the reason the police conducted their investigation as they did, the testimony is not hearsay.[4] *People v. Hunter*, 124 Ill.App.3d 516, 79 Ill.Dec. 755, 767, 464 N.E.2d 659, 671 (1st Dist.1984); *People v. Griggs*, 104 Ill.App.3d 527, 60 Ill.Dec. 277, 432 N.E.2d 1176 (1st Dist.1982); *People v. Sanders*, 80 Ill.App.3d 809, 36 Ill.Dec. 48, 400 N.E.2d 468 (5th Dist.1980); *People v. Daliege*, 40 Ill.App.3d 706, 352 N.E.2d 247 (1st Dist.1976).

In *Daliege*, the appellate court upheld a trial court's admission of police testimony when that testimony was offered to demonstrate an investigatory procedure entirely within the officer's personal knowledge. 352 N.E.2d at 250. In that case, a police officer testified that he had a conversation with a woman, and subsequently proceeded to a particular tavern to find the defendant. *Id.* The court stated:

> The substance of the conversation between Mrs. Sheehan and Officer Morley was not related to the jury. But even if Morley had stated that defendant was arrested on the basis of information given to him by Mrs. Sheehan, such statement would have been properly admitted for the limited purpose of showing why the officer acted as he did.

*Id.* This ruling was applied to a Sixth Amendment claim by the First District in *People v. Hunter*, 124 Ill.App.3d 516, 79 Ill.Dec. 755, 464 N.E.2d 659 (1st Dist.1984). In *Hunter*, the court upheld the testimony of police officers, stating that a conversation between themselves and an informant led to the defendant's arrest. 79 Ill.Dec. at 766, 464 N.E.2d at 670. The trial court kept the substance of this conversation from the jury, admitting the testimony for the limited purpose of demonstrating police procedure. The appellate court held this to be proper. 79 Ill.Dec. at 767, 464 N.E.2d at 671. The court stated:

> Such testimony is not hearsay because it is based on the officer's own personal knowledge, and is admissible although the inference logically to be drawn therefrom is that the information received motivated the officer's subsequent conduct.

*Id.*

In the instant case, Detective Mann's testimony regarding White's affiliation with the Moroccan Tribe was only

---

**3.** The Supreme Court has held that the Confrontation Clause of the Sixth Amendment applies to the states, and that a primary interest secured by this clause is the right of cross-examination. *Douglass v. Alabama*, 380 U.S. 415, 417–419, 85 S.Ct. 1074, 1076–1077, 13 L.Ed.2d 934 (1965). In federal habeas corpus proceedings, the federal courts must defer to a state court's interpretation of its own rules of evidence and procedure. *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir.1985). The court, in determining the sufficiency of evidence for a state criminal conviction for purposes of a habeas corpus review, must view the evidence in the light most favor-

able to the state and grant the petition only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt. 758 F.2d at 1435. The court must presume that conflicting inferences to be drawn from the evidence were resolved in favor of the prosecution. *Id.* Therefore, this court must defer to the interpretation of the Illinois courts on rules of evidence and procedure, viewing the evidence in the light most favorable to the prosecution.

**4.** This is consistent with the Federal Rules of Evidence. *See* Fed.R.Evid. 801(c).

admitted into evidence for a limited purpose[5] and was not hearsay.[6]

Throughout the trial, the state court was sympathetic to the possible prejudicial effect of an inference of gang activity on the part of petitioner. During jury selection, Judge Sklodowski excluded all jurors who had seen a recent television talk show regarding gang violence, stating:

> ... [A]nyone who saw the show is excluded. I am not going to ask them what their impression was of the show, what they saw or anything. If they saw the show, they are excluded from this case. I want to try and do the best I can. I didn't take what you [defense attorney Mr. Gant] said lightly [referring to the prejudicial harm of an inference of gang activity].

(R. 3). In addition, the trial court allowed the defense a special voir dire of Detective Mann, outside the presence of the jury, the purpose of which was to allow the defense attorney the opportunity to question the preparation of Mann's gang membership list as well as his personal knowledge of White's gang affiliation, without unduly prejudicing the jury. Thus, the prejudicial effect of the statement, if any, was not substantial.

 Illinois courts have held that the admission of hearsay identification constitutes reversible error only when it serves as a substitute for courtroom identification, or when it is used to strengthen weak testimony.[7] If the hearsay testimony is merely cumulative, or if it is supported by a positive identification, it constitutes harmless error. *People v. Daliege*, 40 Ill. App.3d 706, 352 N.E.2d 247, 250 (1st Dist. 1976). In upholding the trial court's admission of Mann's testimony for limited purpose, the appellate court also noted that even if Mann's testimony were hearsay, the error would not be reversible. *People v. White*, slip op. No. 85–7687 (Ill.App.Ct. Oct. 23, 1986). There is nothing in the record to demonstrate that either state court was in error on this point.[8] Accordingly, the rights afforded to petitioner under the Sixth Amendment Confrontation Clause were not implicated by the admission of Mann's testimony.

For the foregoing reasons, we deny the petition for a writ of habeas corpus. It is so ordered.

---

5. [Assistant State's Attorney] BEUKE: ... there has been testimony both on direct and cross-examination from the witnesses as to naming an individual named Speedy, giving description to the police.
THE COURT: And this witness [Detective Mann] is going to verify Speedy?
[Assistant State's Attorney] DE LUCA: Right. How he was able to track him down.
THE COURT: Overruled.
(R. 313).

6. *Illinois standards regarding the admission of police testimony for a limited purpose are consistent with federal law.* The Seventh Circuit has upheld the admission of a DEA agent's testimony outlining the background of a government investigation, when such testimony was offered for the limited purpose of explaining the agent's law enforcement activity. *United States v. Mancillas*, 580 F.2d 1301, 1309–1310 (7th Cir. 1978); *see also* Fed.R.Evid. 401, 403, 801(c).

7. The law in this Circuit is the same. *Accord, Harrison v. Owen*, 682 F.2d 138 (7th Cir.1982).

8. In his motion for summary judgment, petitioner cites *Fahy v. Connecticut*, 375 U.S. 85, 86, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963), that in determining whether an error was harmless beyond a reasonable doubt, the question is whether there is a reasonable possibility that the error might have contributed to the conviction. The petitioner then reasons that "the evidence on which Petitioner was found guilty consisted of statement and testimony of Officer Mann and his source of information." This is a gross understatement of the evidence. The record contains the testimony of two eyewitnesses to the shooting. Each identified the petitioner as "Speedy," a suspected gang member. We find it difficult to believe that the weight of Detective Mann's testimony would overshadow the weight of the testimony of these eyewitnesses.