THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SYDNEY MILLER, Defendant-Appellant.

First District (2nd Division) No. 1—96—0071

Opinion filed December 15, 1998.

James K. Leven, of Northbrook, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Michelle Katz, Assistant State's Attorneys, of counsel), for the People.

JUSTICE COUSINS delivered the opinion of the court:

The defendant, Sydney Miller, was convicted in a jury trial of attempting to murder his ex-wife and murdering her boyfriend. The trial court sentenced the defendant to 55 years in prison for the first degree murder conviction and 25 years for the attempt (murder) conviction, to be served consecutively.

## ISSUES PRESENTED

The defendant appeals his convictions and sentences on the grounds that the trial court erred by: (1) improperly admitting prior consistent testimony that bolstered the credibility of a crucial prosecution witness; (2) allowing the prosecution to make in its closing argument multiple improper statements that inflamed the jury's passions and misstated the burden of proof; (3) finding that consecutive sentences were mandated, in the absence of a specific finding that the two crimes were part of a single course of conduct and thus fit under the consecutive sentencing statute; and (4) imposing an excessive sentence that did not adequately take into account mitigating factors and the defendant's rehabilitative potential.

## BACKGROUND

Gloria Miller obtained a divorce from the defendant after two years of marriage. They had one child, Tiana, who was six at the time of the trial. In May of 1995, Gloria lived with her boyfriend Julius Wilson, her godmother Lorraine Hampton, and her daughter Tiana. Ms. Miller was seven months pregnant with Mr. Wilson's baby. Tiana stayed with the defendant on weekends.

On one occasion in April, Mr. Wilson spanked Tiana for not cleaning up her room when asked to do so. Tiana told this to the defendant over the weekend of May 13-15. According to Tiana's testimony, the

defendant went into a rage. He called Ms. Miller and said he was going to take her to court. He walked around talking to himself and said that he was going to stab Mr. Wilson. Tiana testified that before the defendant took her home that Sunday, he took a gun out of the trunk of his car and put it in his waistband.

Lorraine Hampton testified that she was in the kitchen that afternoon when she heard the doorbell ring. Ms. Miller buzzed Tiana and the defendant into the building. She saw the defendant stick his head through the doorway. She heard the defendant and Ms. Miller arguing in the stairwell and then outside on the porch.

At that point, Mr. Wilson came out of the bedroom. Ms. Hampton tried to persuade him not to go outside, but Mr. Wilson said that he wanted to explain that he did not beat Tiana and was not mean to her. Ms. Miller met him at the bottom of the stairs and she also implored Mr. Wilson to go back inside to avoid a confrontation with the defendant. She went back onto the porch, where she and the defendant resumed their argument. Ms. Hampton once again asked Mr. Wilson not to go outside, but to no avail. While Ms. Hampton was on the staircase she heard sounds like gunfire. When she looked through the door a few moments later she saw the defendant walking to his car, putting a black object in his waistband.

Ms. Miller had been shot in the head, and Mr. Wilson had been fatally shot in the head and chest. Ms. Miller survived, as did her baby, although she suffered brain damage which apparently has left her unable to remember the shooting.

Testimony also established that the defendant had bought a handgun in 1993 of the same general type as that used in the murder. The murder weapon was not recovered, however.

Geneva Barnes, the downstairs neighbor of Ms. Miller, testified that she heard shots and then she saw a man get into a car after putting a gun in his waistband. From her angle, however, she could not see his face.

Detective Elizabeth Shinn testified that she spoke with Tiana at the crime scene. She asked Tiana to describe the gun used in the incident. Tiana said that it was black and gold. Detective Shinn showed Tiana her gun, which was black and silver, and asked if the murder weapon looked like that. Tiana pointed to the silver part of the gun, and Detective Shinn said "Honey, that's silver."

During direct examination, Tiana testified that she had seen her father with a gun. When Tiana was being cross-examined at trial, however, she said that she had never seen a gun and did not know what one looked like. The prosecution wanted to introduce Detective Shinn's testimony in order to show that the latter statements were

not true. The defense objected that this would be an inadmissible prior consistent statement. The trial court admitted the evidence either as a prior consistent statement to rebut an implied charge of recent fabrication or as a prior inconsistent statement for the prosecution to impeach its own witness. The court did not admit it as substantive evidence and did include a limiting instruction.

Tiana testified that she went to see the defendant in jail prior to the trial. During this meeting, the defendant reportedly told her that in order for him to get out she would need to stop saying that she had seen him with a gun. He also reportedly told her that she should tell the truth at trial.

The defendant was convicted in a jury trial of first degree murder and attempt (murder) as well as two counts of aggravated battery which merged with the prior counts. The trial court sentenced the defendant to 55 years for the first degree murder conviction and 25 years for the attempt (murder) conviction, with the sentences to run consecutively.

DISCUSSION

I

Defendant first contends that the trial court erroneously admitted Detective Shinn's testimony about her conversation with Tiana. We agree.

Tiana gave conflicting testimony at trial. First she testified that she had seen her father with a gun. Later she testified that she did not know what a gun looked like. In order to support Tiana's initial testimony, the prosecution introduced testimony by Detective Shinn concerning the substance of a conversation with Tiana about what her father's gun looked like. The trial judge properly refused to admit this testimony as substantive evidence since it was hearsay. Nevertheless, the judge did allow the testimony in for rehabilitation or perhaps for impeachment.

Detective Shinn's testimony that she discussed with Tiana the appearance of her father's gun was consistent with Tiana's statement that she saw her father with a gun and inconsistent with Tiana's statement that she did not know what a gun looked like. Thus the trial judge gave two possible rationales for admitting the evidence: as a prior consistent statement to rehabilitate Tiana's earlier testimony, or as a prior inconsistent statement to impeach her later testimony. In fact, neither of these was an appropriate basis to introduce Detective Shinn's testimony.

■ The law is well settled in Illinois that prior consistent state-

ments are generally inadmissible. Admission of such testimony would "unfairly enhance a witness' credibility because a jury is more apt to believe something that is repeated." *People v. Montgomery*, 254 Ill. App. 3d 782, 792, 626 N.E.2d 1254, 1261 (1993). There is, however, an equally well-recognized exception to this rule: Where there is a charge that the witness' testimony is recently fabricated or that the witness has a motive to testify falsely, a prior consistent statement may be introduced to rebut this charge, provided, however that the prior consistent statement was made before the motive to fabricate arose. *People v. Harris*, 123 Ill. 2d 113, 139-40, 526 N.E.2d 335 (1988). Evidence of a prior consistent statement is not admissible, though, to rebut a charge of mistake or inaccuracy. *Moore v. Anchor Organization for Health Maintenance*, 284 Ill. App. 3d 874, 885, 672 N.E.2d 826, 834-35 (1996).

■ The prosecution maintains that Detective Shinn's testimony was properly admitted under the recent fabrication exception. The prosecution has not, however, identified any supposed motive for Tiana to falsely say that she saw her father with a gun, or at least no motive that arose between the time of Tiana's conversation with Detective Shinn and the trial. Thus the exception does not apply. See *People v. Henderson*, 142 Ill. 2d 258, 310, 568 N.E.2d 1234 (1990).

It is true that a motive to fabricate testimony may have arisen for Tiana when she saw her father in prison and he told her that she would have to stop saying that she saw him with a gun in order for him to go free. But this was a motive for her to lie by saying that she did not see a gun. It is the prosecution, not the defense, who would want to suggest that such testimony was fabricated. In other words, the prosecution introduced Detective Shinn's testimony, if anything, in order to *support* a charge that Tiana fabricated testimony because of a recent motive, not to rebut such a charge.

The prosecution correctly notes that a charge of recent fabrication does not have to be explicit for the exception to apply. *Henderson*, 142 Ill. 2d at 310. Nevertheless, just because evidence is introduced that contradicts a witness' in-court testimony (*Moore*, 284 Ill. App. 3d at 885, 672 N.E.2d at 834) or because a witness is impeached (*People v. West*, 263 Ill. App. 3d 1041, 1048, 636 N.E.2d 948, 954 (1994)), it does not necessarily follow that there has been a charge of recent fabrication. Similarly, the mere fact that the defense elicited testimony on cross-examination that contradicted Tiana's earlier testimony does not imply a charge of fabrication. If courts were to admit prior consistent statements whenever there was any questioning or contradiction of a witness' testimony, the exception would swallow the rule. See *People v. Bobiek*, 271 Ill. App. 3d 239, 244, 648 N.E.2d 160, 164 (1995).

■ Detective Shinn's testimony also was not admissible under the

converse theory that it contained a prior *inconsistent* statement that could be used to impeach Tiana. Under Supreme Court Rule 238(a) (134 Ill. 2d R. 238(a)) a party may impeach its own witness with a prior inconsistent statement. But before a party may do so, it must show that the witness' testimony has damaged its case, as opposed to failing to support it. *People v. Sims*, 285 Ill. App. 3d 598, 610, 673 N.E.2d 1119, 1127 (1996); *People v. Weaver*, 92 Ill. 2d 545, 563, 442 N.E.2d 255 (1982). Tiana testified on cross-examination that she did not know what a gun looked like. Had she testified that her father did not have a gun, this would have damaged the State's case. But as it is, her testimony merely failed to support the State's case, since it was not inconsistent with the defendant being guilty under the State's theory of the case.

Given that it was error to admit Detective Shinn's testimony, this court must now determine whether the error warrants reversal. Whether improper admission of a prior consistent statement is grounds for reversal of a criminal verdict is determined on a case-by-case basis. *Henderson*, 142 Ill. 2d at 311.

■ Illinois courts have put forward several formulations of the standard to be used in making this determination. One standard is that if "there is a reasonable probability that erroneously admitted testimony contributed to a conviction," the error will not be considered harmless. *People v. Lambert*, 288 Ill. App. 3d 450, 460, 681 N.E.2d 675, 682 (1997). Another is that the erroneous admission of a prior consistent statement is reversible error if the witness' in-court testimony is crucial. *People v. Smith*, 139 Ill. App. 3d 21, 34, 486 N.E.2d 1347 (1985). Yet another runs: "Even if sufficient competent evidence was introduced to establish a defendant's guilt beyond a reasonable doubt, there is still reversible error when the improper admission clouds the evidence to such a degree that it is impossible to tell whether the jury relied on it." *Smith*, 139 Ill. App. 3d at 34. The common theme is that the error in admitting the testimony is reversible if the reviewing court cannot say beyond a reasonable doubt that the improperly admitted testimony did not affect the outcome of the trial. See *Bobiek*, 271 Ill. App. 3d at 244, 648 N.E.2d at 164.

■ Illinois courts have identified a number of factors to be considered in making a determination of whether the improperly admitted evidence affected the outcome. The most important factor is whether the statement had a bearing on guilt or innocence. *Smith*, 139 Ill. App. 3d at 34, 486 N.E.2d at 1347. The harm from a prior consistent statement is aggravated if the judge admits it as substantive evidence. However, a limiting instruction may mitigate the problem. *Lambert*, 288 Ill. App. 3d at 461, 681 N.E.2d at 683. The error is more

likely to be reversible if the improperly admitted testimony is mentioned in closing argument. The error is less likely to be reversible if the improperly admitted evidence is merely cumulative and there is other evidence that serves to support the conclusions drawn by the jury. *Lambert*, 288 Ill. App. 3d at 461, 681 N.E.2d at 683. Improperly admitted prior consistent statements are less damaging if the prior consistent statements are attested to by the party that made them as opposed to a third party. *Henderson*, 142 Ill. 2d at 311. Cases also have said it is important whether the evidence was closely balanced. *People v. Sommerville*, 193 Ill. App. 3d 161, 176, 549 N.E.2d 1315, 1326 (1990).

In this case, these factors point in both directions. On the one hand, whether the defendant was seen with a gun did have a bearing on the issue of his guilt or innocence. On the other hand, the evidence against the defendant was strong.

On the one hand, the statement was attested to by a third party rather than its maker. This is an especially important consideration under the facts of this case, because a jury would be likely to find a police detective more credible than a six-year-old child. See *People v. Montgomery*, 254 Ill. App. 3d 782, 792, 626 N.E.2d 1254, 1261 (1993). On the other hand, there was other corroboration for Tiana's testimony that the defendant had a gun. Ms. Hampton saw the defendant put a black object in his waistband as he walked away. Ms. Barnes saw a man put a gun in his waistband as he walked away.

On the one hand, the improperly admitted statement was mentioned in closing argument:

> "Remember what Detective Shinn said. She, Tiana, originally told her it was gold and black and then she said, do you mean it is something like this and Detective Shinn showed her, her own gun. Yeah, that is what it is like."

On the other hand, the statement was not emphasized or dwelt on at length.

On the one hand, the court gave a limiting instruction:

> "Ladies and gentlemen, the court has received evidence at this moment that an earlier witness, Tiana Miller, made a statement to this witness, Detective Shinn, which you may consider as being generally consistent with the testimony you heard from the witness Tiana Miller in this courtroom.
>
> It is received for that purpose only and may not be considered by you for any other purpose."

On the other hand, the limiting instruction was ineffective, because it did not forbid the jury from considering the evidence for the impermissible purpose. If a hearsay statement is properly admitted for a limited

purpose, and the judge gives an instruction admonishing the jury to consider the statement only for that limited purpose, this prevents error. *People v. Wurster*, 83 Ill. App. 3d 399, 403 N.E.2d 1306 (1980). However, if a judge admits testimony for an improper purpose and then gives an instruction to the jury that it should only consider the testimony for that (improper) purpose, obviously that does not cure the error.

Since the factors point both ways in this case, it is arguable that the improper admission of Detective Shinn's testimony by itself would not constitute reversible error. However, the issue remains whether, when considered in conjunction with certain misstatements of law in the closing argument, the cumulative errors constitute reversible error.

## II

■ Defendant next contends that certain allegedly improper comments made by the prosecution in closing argument denied him a fair trial. At the outset, we note that the State is given wide latitude in closing arguments. *People v. Davis*, 104 Ill. App. 3d 512, 516, 432 N.E.2d 1134 (1982). The State may comment on the evidence, draw inferences therefrom, and comment on the accused's credibility. *People v. Weatherspoon*, 63 Ill. App. 3d 315, 322, 379 N.E.2d 847 (1978).

■ The first allegedly improper comment was:

"When all of those things happened to those people on those steps on Emerald Street, this man right here condemned his daughter. He condemned his daughter to have to see things that no 6 year old child should ever have to see. He condemned her to have to learn that her father, her daddy, was capable of the most brutal and vicious acts. He condemned her to have to learn, to have to see that her father is a coward."

While we do not condone this comment, in our view, this comment did not exceed the bounds of permissible comment on the evidence and was, at most, harmless error. "In order for the comments of a prosecutor concerning the family of a victim to constitute reversible error the comment must dwell on the victim's family and must be of such a nature as would contribute to a guilty verdict." *People v. DeHoyos*, 172 Ill. App. 3d 1087, 1096, 527 N.E.2d 319, 324-25 (1988).

■ The defendant contends that the prosecution argued facts that were not based on the evidence in the following statement:

"On cross examination she [Tiana] says, well, no, I really don't know what a gun looks like. Ladies and Gentlemen, use your common sense. Does she not know what a gun looks like? It is an unfortunate truth in today's society, but every 6 year old, if not a real gun, know [*sic*] what a gun looks like, a toy gun, a squirt gun, something they have seen on TV. That's just a fact of life."

Although an attorney generally may not argue facts or assumptions not based on evidence (*People v. Rivera*, 277 Ill. App. 3d 811, 661 N.E.2d 429 (1996)), attorneys are permitted to discuss subjects of general knowledge or common sense in closing argument. *People v. Wicks*, 236 Ill. App. 3d 97, 110, 603 N.E.2d 594 (1992). Here, in our view, the prosecution, as a matter of general knowledge, properly could call attention to the ubiquity of images of firearms in our society in asking the jury to evaluate the credibility of Tiana's statement that she did not know what a gun looked like.

■ Defendant claims that the only purpose of the following statement was to inflame the passions of the jury:

"When Julius Wilson felt like what it feels like to cough up blood from his lungs, when he felt what it feels like to have death's cold grip, taken from this earth, as he lay dying on the stairs. What Gloria Miller felt, what it feels like to have a bullet smash into the side of her skull, damaging her brain, threatening the very existence of the baby growing inside her womb."

Again, while we do not condone this argument, in our view, this comment did not exceed the latitude granted to prosecutors in commenting upon evidence. Even if it had, we do not think the comment could have affected the outcome of the trial. Thus any error is harmless. *People v. Whitlow*, 89 Ill. 2d 322, 433 N.E.2d 629 (1982).

■ Next, the defendant argues that the prosecution misstated the burden of proof in closing argument by implying that, in order to find the defendant not guilty, the jury would have to find that the State's witnesses were lying.

"*To believe that Sydney Miller did not commit this murder *** you have to think* that his own daughter and that his—the grandmother [*sic*] of his own daughter, Lorraine Hampton, they all got together and they are making things up, they are adding things, *they are lying*, trying to put a case on Sydney Miller and let the real killer go free.*" (Emphasis added.)

The defendant waived objection to these comments because he did not address them in the trial or in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 187, 522 N.E.2d 1124, 1130 (1988). However, a reviewing court, under proper circumstances, may address a waived issue as plain error. 134 Ill. 2d R. 615(a). Invocation of the plain error doctrine is appropriate in cases where the evidence is closely balanced or where there is an error of such magnitude that it denies the accused a fair and impartial trial. *People v. Carlson*, 79 Ill. 2d 564, 576 (1980); *People v. Hayes*, 139 Ill. 2d 89, 143 (1990). We may consider the issue as plain error under the second prong of the test, since for a prosecutor to say that, in order to believe the defense witnesses or to acquit the defen-

dant, the jury would have to find that all the State's witnesses were lying is such a misstatement as may deny the accused a fair trial. *Wilson*, 199 Ill. App. 3d at 796, 557 N.E.2d at 574; *Cole*, 80 Ill. App. 3d at 1105, 400 N.E.2d at 933; *Montgomery*, 254 Ill. App. 3d at 711-12, 626 N.E.2d at 1262-63.

This comment was improper, and the prosecutor repeated the argument several times during rebuttal. It is generally improper for a prosecutor to argue that in order to believe the defendant or to acquit the defendant the jury must believe that the State's witnesses are lying. *People v. Ferguson*, 172 Ill. App. 3d 1, 13, 526 N.E.2d 525, 534 (1988) ("[T]he cases are clear in their universal condemnation of this form of argument"). In *People v. Coleman*, 158 Ill. 2d 319, 346, 633 N.E.2d 654, 668 (1994), the Illinois Supreme Court made a distinction between two versions of this argument that were erroneous for different reasons. For the prosecution to argue that in order to acquit the defendant the jury must believe that the State's witnesses are lying is a misstatement of law and a serious error which shifts the burden of proof. See *People v. Wilson*, 199 Ill. App. 3d 792, 797, 557 N.E.2d 571 (1990) ("[To] misstate the burden of proof or standard of review, to any extent, compromises the fairness of the judicial process").

For the prosecution to argue that, " 'in order to believe the defendant's version of the incident' " (*Coleman*, 158 Ill. 2d at 346, 633 N.E.2d at 668, quoting *People v. Siefke*, 195 Ill. App. 3d 135, 145, 551 N.E.2d 1361, 1369 (1990)), the jury must believe that the State's witnesses are lying is usually a misstatement of the evidence and a less serious error. This is especially true if the testimony of the defense and prosecution witnesses is directly contradictory on matters concerning which they are not likely to be mistaken—that is, if under the circumstances of the case the statement is not substantially misleading. *People v. Roman*, 98 Ill. App. 3d 703, 707, 424 N.E.2d 794, 798 (1981). However, in our view, in the instant case, the prosecution's argument violated the proscription against misstatements of law that in effect distort the burden of proof. *Wilson*, 199 Ill. App. 3d at 797, 557 N.E.2d at 571. In *United States v. Vargas*, 583 F.2d 380 (7th Cir. 1978), the federal court held:

> "It is well established that a prosecutor's misstatement of law in closing argument can be grounds for reversal. [Citations.] Included within this restriction are statements that in effect distort the burden of proof by suggesting incorrectly what the jury must find in order to reach a certain verdict. [Citations.]" *Vargas*, 583 F.2d at 386.

In *Vargas* the prosecutor informed the jury that, in order to reach a verdict of not guilty, it would have to find that the prosecution's wit-

nesses were lying. In our view, the same is true here. The defendant did not testify and, in effect, the prosecutor informed the jurors that in order to reach a not guilty verdict they would have to find that all the State's witnesses had lied.

Specifically, in this case, the prosecution argued that "to *believe that Sydney Miller did not commit this murder* \*\*\* you have to think \*\*\* they are lying." (Emphasis added.)

Under the circumstances of this case, the statement was particularly misleading since none of the prosecution witnesses actually claimed to have seen the shooting and the defendant contended that Tiana, defendant's daughter, who testified for the prosecution, was really mistaken. It would be consistent with the defendant's innocence that the State's witnesses were mistaken rather than lying. But the prosecution would not allow that possibility, saying: "They're not mistaken, you have to believe that they're lying."

█ Finally the defendant also contends that the combined effect of the State's errors also deprived him of a fair trial. We agree. Assuming, *arguendo*, that the prosecutorial argument we now hold to be error does not constitute reversible error by itself in this case, the comments coupled with the improper bolstering of Tiana's testimony certainly had the cumulative effect of denying defendant a fair trial. See *People v. Davidson*, 235 Ill. App. 3d 605, 613, 601 N.E.2d 1146, 1152 (1992) (finding this type of misstatement to be reversible error when combined with other errors); *Montgomery*, 254 Ill. App. 3d at 796, 626 N.E.2d at 1264 (same).

## III

Since we have determined that the defendant should be granted a new trial, it is unnecessary for us to address the arguments regarding his sentence.

For the foregoing reasons, we reverse the defendant's conviction and remand for a new trial.

Reversed and remanded.

GORDON, P.J., and McNULTY, J., concur.