THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANGEL RODRIGUEZ, Defendant-Appellant.

First District (2nd Division)   No. 1—98—2524

Opinion filed March 31, 2000.

McBRIDE, J., specially concurring in part and dissenting in part.

John Thomas Moran, Jr., of John T. Moran & Associates, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Holly L. Rappin, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Defendant, Angel Rodriguez, was charged by indictment in the circuit court of Cook County with the murder of Ibrahim Zayed. Following a jury trial, defendant was found guilty of first degree murder (720 ILCS 5/9—1(a)(1) (West 1996)) and subsequently sentenced to 60 years' imprisonment in the Illinois Department of Corrections. On appeal of his conviction and sentencing, defendant contends: (1) he received ineffective assistance of counsel where his trial counsel failed to file motions to quash defendant's arrest and suppress both defendant's lineup identification and postarrest oral comment; (2) the trial court abused its discretion in (a) permitting several police detectives to improperly corroborate Andrew Bolton's identification of defendant with prior consistent statements, (b) allowing the jury to hear evidence of an informant's out-of-court statements, and (c) failing to correct the State's closing arguments; and (3) defendant was not proven guilty beyond a reasonable doubt where the sole eyewitness to the crime lacked credibility and where there was no corroborative evidence linking defendant to the crime.

For the following reasons, we reverse.

## BACKGROUND

The evidence at trial established that, on November 24, 1996, Ibrahim Zayed and Andrew Bolton, Zayed's employee, were working in Zayed's grocery store, Karlov Foods, located on the corner of Karlov and Potomac Avenues in Chicago, Illinois. Zayed was involved in a legal dispute with the landlord of the building and had gotten into an argument on the telephone with the landlord that afternoon. Thereafter, at approximately 2:45 p.m., Zayed was seated behind the counter watching television and taking tape off of a toy gun. Bolton was seated on the other side of the counter, approximately two feet from Zayed and six feet from the front door of the store. A man entered the store holding the front door open with his left arm and holding a gun in his right hand. He shouted "hey" and fired the gun three or four times in

the direction of Zayed, shooting him in the chest and abdomen. The man then fled southbound down Karlov Avenue. After the man ran out of the store, Bolton locked the front door, pressed the robbery button by the cash register and called 911. Bolton then comforted Zayed, who was moaning and having difficulty breathing. The police arrived on the scene approximately 5 to 10 minutes after the shooting. The ambulance arrived approximately five minutes after the arrival of the police. Zayed was then transported to Christ Hospital, where he subsequently died as a result of multiple gunshot wounds. Two 9 millimeter cartridge cases and one fired bullet were later recovered from the scene.

At the scene, Bolton described the shooter to Officer Daniel Keenan as a male Hispanic, brown eyes, 25 to 30 years old, 6 feet and 1 inch tall, 170 pounds, wearing a blue jean jacket and a colorful knit cap that came down over the man's eyebrows. Thirty minutes later, Bolton went to Area 5 police headquarters, where he spoke to Detective Robert Rutherford and created a composite sketch of the suspect with the assistance of a computer program. At Area 5, Bolton added to the description that the shooter also had a mustache.

On January 15, 1997, Detective Ernest Halvorsen was assigned to the investigation of Zayed's homicide. After interviewing Bolton, the detective learned that, one week after the shooting, Bolton saw the shooter in front of Pete and Jack's grocery store, located on the corner of Division Street and Keeler Avenue. Bolton informed Detective Halvorsen that the shooter and another individual were standing near the grocery store loading a snow blower onto a red pickup truck. However, Bolton did not call the police at the time because he was afraid that the shooter recognized him.

On January 16, 1997, Detective Halvorsen went to the grocery store and interviewed two of the store's employees, Steve and John Salamy. Upon questioning, Steve Salamy confirmed that an individual tried to sell him a snow blower in late November of 1996 and that the composite sketch looked like the man who tried to sell him the snow blower, except that the nose was slightly different. Salamy subsequently viewed a lineup in March 1997 in which defendant Angel Rodriguez was a participant, but Salamy was unable to make an identification.

In early March 1997, Detective Halvorsen received information of a possible suspect in the shooting. Detective Halvorsen then sent for a picture of the suspect, receiving a photograph of defendant. Detective Halvorsen noted that the physical description of defendant was "very similar" to the description of the shooter given to the police by Bolton on the date of the murder. Thus, in an effort to "physically look at

this person," Detective Halvorsen went out to see defendant on the street, observing that he matched the physical characteristics of the shooter given by Bolton. Detective Halvorsen then put together a photo array consisting of defendant's photograph and five "filler" photographs to present to Bolton, who later identified defendant as the shooter.

On March 23, 1997, defendant was arrested on a traffic warrant and brought to Area 5. At trial, a stipulation was entered that defendant's traffic warrant had been recalled prior to the arrest.

On March 24, 1997, defendant participated in a lineup wherein he was identified by Bolton as the person who shot and killed Zayed. Defendant was then placed under arrest for first degree murder by Detective John Woodhall. Assistant State's Attorney (ASA) Sean Gallagher advised defendant of his *Miranda* rights and interviewed him immediately thereafter. Upon questioning, defendant stated that he did not know where he was on November 24, 1996, at approximately 2:45 p.m. However, while ASA Gallagher was asking defendant whether he knew what the victim was holding at the time of the incident, defendant interjected "fake gun." Although defendant contended at trial that he stated Zayed was playing with a toy gun because he believed that was what ASA Gallagher was about to say, neither the police nor ASA Gallagher told defendant that the victim was holding a toy gun prior to when defendant made this statement.

On March 10, 1998, following a jury trial, defendant was found guilty of first degree murder. See 720 ILCS 5/9—1(a)(1) (West 1996). On June 3, 1998, defendant filed his motion for judgment notwithstanding the verdict or, in the alternative, a new trial, which was denied by the trial court. Thereafter, on June 29, 1998, defendant was sentenced to 60 years' imprisonment in the Illinois Department of Corrections. This appeal followed.

## OPINION

### I

Defendant contends that he received ineffective assistance of counsel where his trial counsel failed to file motions to quash defendant's arrest and suppress both defendant's lineup identification and postarrest oral comment, as he was in custody as a result of a "dead" traffic warrant. We disagree.

■ It is well established in Illinois that the benchmark in determining whether there has been ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686,

80 L. Ed. 2d 674, 692-93, 104 S. Ct. 2052, 2064 (1984); see also *People v. Beals*, 162 Ill. 2d 497, 504, 643 N.E.2d 789, 793 (1994). Under the two-part test for judging ineffective assistance of counsel claims, a defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness and the shortcomings of counsel were so severe as to deprive defendant of a fair trial; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *Beals*, 162 Ill. 2d at 504, 643 N.E.2d at 793. Additionally, defendant bears the heavy burden of overcoming a strong presumption in favor of finding that counsel's advocacy was not ineffective. *People v. Albanese*, 104 Ill. 2d 504, 526, 473 N.E.2d 1246, 1255 (1984). Specifically, the defendant must show that his counsel made errors so serious, and his performance was so deficient, that he was not functioning as the counsel guaranteed the defendant by the sixth amendment to the United States Constitution and that these deficiencies so prejudiced the defendant as to deprive him of a fair trial whose result is reliable. *People v. Caballero*, 126 Ill. 2d 248, 259-60, 533 N.E.2d 1089, 1091 (1989).

■ In the instant case, defendant contends that trial counsel was ineffective for failing to file motions to quash defendant's arrest and suppress the fruits of that arrest. However, the question of whether to file a motion to quash an arrest or to suppress evidence is traditionally considered a matter of trial strategy (*People v. Morris*, 229 Ill. App. 3d 144, 157, 593 N.E.2d 932, 941 (1992)), an area left to the trial counsel's discretionary judgment and, therefore, one in which the court will not indulge in hindsight analysis to determine whether counsel's decision was adequate under the circumstances (*Albanese*, 104 Ill. 2d at 525, 473 N.E.2d at 1255). Instead, to prevail on a claim that trial counsel is ineffective for failing to file a motion to quash and suppress, defendant must show that the motion would have been granted and that the trial outcome would have been different if the evidence had been suppressed. *Morris*, 229 Ill. App. 3d at 157, 593 N.E.2d at 941.

■ The parties stipulated at trial that the traffic warrant upon which defendant initially had been arrested had been recalled and was no longer active at the time of defendant's arrest. Nevertheless, nothing in the record indicates that police officers knew, at the time of arrest, that the traffic warrant was no longer in effect. No questions were posed to the police officers at trial regarding whether they knew of the status of the warrant at the time defendant was arrested, and the initial arrest report only indicates that defendant was arrested on an "outstanding traffic warrant." In the absence of evidence in contradiction, we agree that the police officers acted on the reasonable

and objective good-faith belief that there was an active warrant for defendant's initial arrest. See 725 ILCS 5/114—12 (West 1996). Moreover, as defendant had been positively identified prior to his arrest as the individual who shot and killed Zayed on November 24, 1996, we agree that the police officers had probable cause to arrest defendant notwithstanding the recalled warrant. *E.g., Morris*, 229 Ill. App. 3d at 158, 593 N.E.2d at 942.

In sum, we hold that defendant has failed to overcome the strong presumption that his trial counsel's conduct fell within the wide range of professional assistance afforded to him under the sixth amendment (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065), as any motion filed by trial counsel to quash defendant's initial arrest or suppress any fruits thereof would have been futile. See *People v. Robinson*, 299 Ill. App. 3d 426, 435, 701 N.E.2d 231, 240 (1998) ("[a] defense attorney who is aware that an arrest or search is proper may reasonably view a motion to suppress as a futile effort that he or she has no obligation to pursue"). In view of our disposition of the first prong of the *Strickland* analysis, we need not address whether defendant suffered prejudice as a result of defense counsel's alleged deficiencies. See *People v. Bean*, 137 Ill. 2d 65, 131, 560 N.E.2d 258, 288 (1990) (holding that a reviewing court may dispose of an ineffective assistance of counsel claim by applying either component of the *Strickland* analysis, and if it is not proved, need not consider the other component).

## II

Defendant next contends that the trial court abused its discretion in (a) permitting several police detectives to improperly corroborate Bolton's identification of defendant with prior consistent statements, (b) allowing the jury to hear evidence of an informant's out-of-court statements, and (c) failing to correct the State's closing arguments. We will address each of defendant's contentions in turn.

### A. Prior Consistent Statements

During trial, the State called Detective Halvorsen to testify to the description of the shooter provided by Bolton just after the incident. Thereafter, the following colloquy occurred:

"[THE STATE]: What was the next thing that you did with respect to this investigation?

[HALVORSEN]: Early in March a name of a possible suspect was given to me.

Q. After you received this information, the name of a possible suspect[,] what did you do?

A. I sent for a photograph of this person.

Q. And did you receive that photograph?

A. Yes, I did.

Q. And who was that a photograph of?

A. Angel Rodriguez.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

\* \* \*

Q. When you received the photograph of the defendant did you also receive other information about this defendant?

A. I checked his physical description and his age.

Q. When you checked his physical description and his age what did you notice?

A. I noticed it was very similar to the description.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled. You may answer.

A. I noticed that his physical description was very similar to the one provided by Andrew Bolton.

\* \* \*

Q. After you received this information and the photograph of the defendant what was the next thing that you did with respect to this investigation?

A. I went out and tried to physically look at this person myself. I saw him on the street and observed that he did match the physical characteristics; height, weight, and description that Andrew Bolton had given the day of the murder."

In addition, Detective Woodhall testified that, on March 24, 1997, he conducted the lineup in which defendant participated and that he witnessed Bolton view the lineup and identify defendant as "the person who shot and killed Zayed."

■ Defendant argues that the testimonies were improper and reversible because the detectives were not witnesses to the crime and, as such, their testimonies falsely corroborate the actual eyewitness' identification. We disagree. Generally, evidence of statements made prior to trial for the purpose of corroborating testimony at trial is inadmissible (*People v. Emerson*, 97 Ill. 2d 487, 501, 455 N.E.2d 41, 47 (1983)), as admission of such testimony would " 'unfairly enhance a witness' credibility because a jury is more apt to believe something that is repeated.' " *People v. Miller*, 302 Ill. App. 3d 487, 492, 706 N.E.2d 947, 952 (1998), quoting *People v. Montgomery*, 254 Ill. App. 3d 782, 792, 626 N.E.2d 1254, 1261 (1993). Nevertheless, the general rule that witnesses may not testify as to statements made out of court to corroborate their testimony given at trial does not apply to statements of identification. *People v. Shum*, 117 Ill. 2d 317, 342, 512 N.E.2d 1183, 1191 (1987); *Beals*, 162 Ill. 2d at 508, 643 N.E.2d at 795.

"If a witness testifies that he previously identified an offender and the witness' veracity has been tested on cross-examination, a third person may then testify that he heard or saw the witness previously identify the offender. The third person's corroborative testimony is considered reliable, and therefore admissible, because both the witness and the third person are subject to cross-examination at trial." *Beals*, 162 Ill. 2d at 508, 643 N.E.2d at 795. See also 725 ILCS 5/115—12 (West 1996).

■ Here, Bolton testified that he previously identified defendant from both the photo array and the lineup, and the veracity of this testimony was tested on cross-examination. Thereafter, the detectives corroborated Bolton's testimony inasmuch as it concerned the identification of defendant. While we agree that the trial court properly allowed the detectives to corroborate Bolton's identification of defendant with his prior consistent statements (see *Beals*, 162 Ill. 2d at 508, 643 N.E.2d at 795; 725 ILCS 5/115—12 (West 1996)), any statement regarding the defendant's name and identification from an undisclosed source constitutes inadmissible hearsay, as explained more fully below. See *Beals*, 162 Ill. 2d at 508, 643 N.E.2d at 795; *People v. Johnson*, 199 Ill. App. 3d 577, 582, 557 N.E.2d 446, 449 (1990).

### B. Hearsay

Defendant contends that the trial court abused its discretion in allowing the jury to hear evidence of an informant's out-of-court statements to Detective Halvorsen regarding the defendant's name and identification, as it constituted hearsay. He further posits that the error was aggravated by the testimony of Detective Woodhall that defendant was in custody "held on an unrelated warrant" the day of the lineup.

■ Hearsay is an out-of-court statement that is offered to prove the truth of the matter asserted therein and dependent for its value on the credibility of the out-of-court declarant. *People v. Sims*, 285 Ill. App. 3d 598, 608, 673 N.E.2d 1119, 1126 (1996). The fundamental basis for excluding such a statement is the lack of an opportunity to test the credibility of the statement through cross-examination. *People v. Clark*, 52 Ill. 2d 374, 389, 288 N.E.2d 363, 371 (1972). However, where the testimony of an out-of-court statement is offered, not for the truth of the matter asserted, but for the limited purpose of explaining the reason the police conducted their investigation as they did, the testimony is not objectionable on the grounds of hearsay. *People v. Sanders*, 80 Ill. App. 3d 809, 814, 400 N.E.2d 468, 471 (1980). Rather, to establish his course of conduct, a police officer may testify that he had a conversation with an individual and that he subsequently acted on the information received. *Sims*, 285 Ill. App. 3d at 608, 673 N.E.2d at 1126.

▮ In the instant case, defendant's contention of hearsay is persuasive although Detective Halvorsen never testified to the substance of the conversation with the informant. *C.f. Johnson*, 199 Ill. App. 3d at 582, 557 N.E.2d at 449. We agree with the State that Detective Halvorsen's testimony was vague in that he testified only that, after receiving information about a possible suspect from an undisclosed source, he noticed that the physical description of defendant was "very similar" to the one provided by Bolton. However, in our view, the detective's reference to an undisclosed source that provided him with "the name of a possible suspect" is inadmissible hearsay in that the defense was not provided an opportunity to cross-examine the undisclosed source to determine the veracity of the identification that initially prompted the investigation. See *Beals*, 162 Ill. 2d at 508, 643 N.E.2d at 795; *Johnson*, 199 Ill. App. 3d at 582, 557 N.E.2d at 449.

As to Detective Woodhall's testimony, we agree that his testimony, although unsolicited by the State, was erroneous. However, the trial court cured the error not only by sustaining defendant's objection and instructing the jury to disregard the testimony (*People v. Simpson*, 286 Ill. App. 3d 1034, 1038, 678 N.E.2d 74, 76 (1997)), but also by instructing the State to elicit testimony from the witness that the "unrelated warrant" was actually a traffic warrant. The parties further stipulated that the warrant was recalled and no longer in effect at the time of the arrest, and the defendant was allowed to cross-examine the detective as to the warrant. Thus, in our view, any potential error caused by Detective Woodhall's unsolicited statement was cured by the trial court.

Notwithstanding the foregoing, defendant's contention regarding the admission of his mug shot into evidence is unavailing, as our supreme court explained in *People v. Arman*, 131 Ill. 2d 115, 545 N.E.2d 658 (1989), that testimony relating to the use of mug shots in an investigation may be introduced to show how a defendant was initially linked to the commission of an offense when identification is a material issue at trial. *Arman*, 131 Ill. 2d at 123, 545 N.E.2d at 662. Defendant, however, argues that the mug shot, which was testified to by Detective Halvorsen, was uncharged evidence of misconduct designed to improperly suggest defendant's propensity to commit crime. See *People v. Hayes*, 139 Ill. 2d 89, 145, 564 N.E.2d 803, 827 (1990). We cannot agree. While mug shot evidence should not be admitted if it tends to inform a jury of a defendant's commission of other, unrelated criminal acts, the erroneous admission at trial of mug shot evidence suggesting the defendant's involvement in unrelated offenses does not automatically warrant reversal. *Arman*, 131 Ill. 2d at 124, 545 N.E.2d at 662. When competent evidence in the record establishes

defendant's guilt beyond a reasonable doubt and it can be concluded that retrial without the erroneous admission of the challenged evidence would produce no different result, the conviction may be affirmed. *Arman*, 131 Ill. 2d at 124, 545 N.E.2d at 662.

Here, we agree that the mug shots were admitted into evidence, not to show defendant's propensity to commit crime as asserted by defendant, but rather to show the reasonableness of Bolton's identification of defendant. *Sims*, 285 Ill. App. 3d at 607, 673 N.E.2d at 1125. We do not agree, however, that Bolton's identification proved defendant's guilt beyond a reasonable doubt, as discussed more fully below. See *Sims*, 285 Ill. App. 3d at 608, 673 N.E.2d at 1126; see also *Arman*, 131 Ill. 2d at 124, 545 N.E.2d at 662.

### C. Closing Argument

Defendant also contends that the trial court abused its discretion in failing to correct the State's closing argument regarding the photo identification process and possible motive of defendant based upon a purported connection to Zayed's landlord, another suspect in the investigation. Specifically, defendant argues that the following portion of the State's opening close was improper:

> "As the police continue their investigation they come to essentially a dead end, the composite is distributed, they don't know who the offender is, but, in March of '97 they get a break, they get some information about who the offender is and Detective Halvorsen orders a photo of the Defendant and lo and behold he puts it into a photo array, about a week later, they're able to locate him and placed him under arrest. He's placed into a lineup and Andrew Bolton comes down and identifies the Defendant again in the lineup, that's the guy, that's the guy who committed the murder."

Defendant contends that the above-referenced comments repeated the prejudicial error already in the record regarding how defendant was initially identified by Bolton. Defendant also asserts that the following comments improperly and prejudicially characterized defendant's argument as a "smoke screen" to the jury.

> "[THE STATE]: *** So for the defense to stand up here before you to say with certainty that there were clearly were just two [gunshots], that can't be said by the physical evidence. But. [*sic*] Ladies and gentlemen, even if you were to accept that as true, even if there were just two shots[ ] fired[,] that doesn't change where Andrew Bolton was in relation to the Defendant at the time the shots were fired. That doesn't change the description that Andrew Bolton gave to the police right after this incident occurred, that doesn't change the composite sketch that he gave them, that doesn't change the identification of this Defendant as the shooter,

but, most importantly, ladies and gentlemen, is there any dispute that these were the two gunshots that caused the death of Ibrahim Zayed? Even if there were just two, these were the two fatal shots, and if he fired them, he's guilty. So, this argument about only two shots it's a smoke screen, ladies and gentlemen."

Initially, we note that defendant faces a substantial burden in attempting to achieve reversal based upon improper remarks made during closing argument (*People v. Byron*, 164 Ill. 2d 279, 295, 647 N.E.2d 946, 954 (1995)), as prosecutors are afforded wide latitude during closing arguments (*Shum*, 117 Ill. 2d at 341, 512 N.E.2d at 1191). "Improper remarks will not merit reversal unless they result in substantial prejudice to the defendant, considering the context of the language used, its relationship to the evidence, and its effect on the defendant's rights to a fair and impartial trial." *People v. Smith*, 141 Ill. 2d 40, 60, 565 N.E.2d 900, 908 (1990); see also *Byron*, 164 Ill. 2d at 295, 647 N.E.2d at 954. The regulation of the substance and style of the closing argument is within the trial court's discretion, and the trial court's determination of the propriety of the remarks will not be disturbed absent a clear abuse of discretion. *People v. Smothers*, 55 Ill. 2d 172, 176, 302 N.E.2d 324, 327 (1973).

Applying these principals to the case at bar, we agree with the State that the comments referred to by defendant as being prejudicial and improper were made in response to defendant's closing argument and were proper inferences to be drawn based on evidence properly adduced at trial in that they explained the course of the police investigation and how the photo array was developed for Bolton to make a photo identification. In addition, while the State concedes that its reference to defense's theory of the case as a "smoke screen" was an improper comment, we do not agree that such an improper comment on the character of defense counsel, in and of itself, constitutes reversible error, as defendant was not deprived of a fair trial as a result thereof. *People v. Johnson*, 159 Ill. App. 3d 991, 999, 513 N.E.2d 852, 858 (1987).

In regard to motive, however, the State made the following comment:

"[THE STATE]: *** The motive as to why the Defendant came into the store during the course of this incident, ladies and gentlemen, it's unclear, but, you'll notice from the propositions that my partner read to you, and the propositions in order to find someone guilty beyond a reasonable doubt to establish the why and the motive is not part of those propositions. We may not know why, but, we do know who, and it's Angel Rodriguez, and we know a few other things other than the why. We know it wasn't a random act

of violence because when he came into that store, if it were a random act both people would have went [sic] at that time. The intent was the store owner, Ibrahim Zayed. We know that the store owner was having a disagreement with the landlord, we know that the landlord wanted him out of the building—

[DEFENSE COUNSEL]: Objection, there was no evidence presented to that, nothing, Judge.

THE COURT: Sustained."

While there was evidence that, on the day of the shooting, Zayed, who was involved in a legal dispute with his landlord, had gotten into an argument on the telephone with the landlord in the afternoon and that the landlord was a suspect in the investigation, no connection was discovered between the landlord and defendant. Therefore, we agree that any reference by the State that the landlord hired defendant to kill Zayed as a purported motive was error. However, as defendant's objection to the comments regarding motive was sustained by the trial court, any error resulting therefrom was cured. See *Simpson*, 286 Ill. App. 3d at 1038, 678 N.E.2d at 76.

### III

Defendant further contends that the State failed to prove him guilty beyond a reasonable doubt where Bolton, the sole eyewitness to the crime, lacked credibility and where there was no corroborative evidence linking defendant to the crime. We agree.

The appropriate standard of review of this issue was established by *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979), and adopted by our supreme court in *People v. Young*, 128 Ill. 2d 1, 538 N.E.2d 461 (1989). Our supreme court held that, in resolving a challenge to the sufficiency of the evidence used to convict a defendant, a reviewing court does not reweigh the evidence. *Young*, 128 Ill. 2d at 49, 538 N.E.2d at 472. Instead, it resolves such a challenge by determining whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Young*, 128 Ill. 2d at 48-49, 538 N.E.2d at 472; see also *Byron*, 164 Ill. 2d at 299, 647 N.E.2d at 956. Where inconsistencies and conflicts exist in the evidence, the trier of fact has the responsibility of weighing the credibility of the witnesses and resolving these conflicts and inconsistencies. *Byron*, 164 Ill. 2d at 299, 647 N.E.2d at 955-56. As such, a reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or on the credibility of witnesses unless the evidence is "so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of [the defendant's] guilt." *People v. Abdullah*, 220 Ill. App. 3d 687, 693, 581 N.E.2d 67, 72 (1991).

■ Nevertheless, the prosecution has the burden of proving beyond a reasonable doubt the identity of the person who committed the crime. 720 ILCS 5/3—1 (West 1996); *People v. Slim*, 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319 (1989). An identification will not be deemed sufficient to support a conviction if it is vague or doubtful. *People v. Ash*, 102 Ill. 2d 485, 494, 468 N.E.2d 1153, 1156 (1984). Furthermore, in assessing identification testimony, we generally use the steps laid out in *Neil v. Biggers*, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972). There, the United States Supreme Court held that the circumstances to be considered in evaluating whether, under the totality of the circumstances, an identification is reliable include: (1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation. *Neil*, 409 U.S. at 199-200, 34 L. Ed. 2d at 411, 93 S. Ct. at 382; see also *People v. Cohoon*, 104 Ill. 2d 295, 300, 472 N.E.2d 403, 406 (1984); *Slim*, 127 Ill. 2d at 307-08, 537 N.E.2d at 319.

Defendant in the case *sub judice* argues that the factors articulated in *Neil* weigh in his favor. Specifically, defendant contends that the record is replete with evidence concerning: (1) the lack of time regarding Bolton's observation of the shooter, as his description was generated from a seven- to nine-second observation made at the scene while his hands covered his face; (2) the multiple impeachment of Bolton's testimony at trial, including his prior inconsistent statements regarding both the number of photographs he was shown by Detective Halvorsen in March 1997 and his plea of guilty to the felonious possession of a controlled substance with intent to deliver; (3) Bolton's failure to make an identification until after a $5,000 reward was posted in the neighborhood; (4) Bolton's failure to inform police at the scene that the shooter had a mustache; and (5) the lack of memorialization of any information regarding the toy gun Zayed was purportedly taking the tape off of at the time of the shooting. The State contends, however, that: (1) Bolton had ample opportunity to view defendant during the commission of the crime, as he was seated only two feet from Zayed during the commission of the crime; (2) based on the amount of detail Bolton provided, he must have paid a considerable degree of attention during the incident; (3) Bolton gave an accurate description of the shooter minutes after the crime occurred; (4) Bolton identified defendant on three separate occasions; and (5) only four months elapsed between the time of the crime and Bolton's identification of defendant from the photo array presented to him by Detective Halvorsen.

■ After viewing the evidence in the light most favorable to the prosecution (*Young*, 128 Ill. 2d at 48-49, 538 N.E.2d at 472), we agree that the prosecution failed to meet its burden of proving beyond a reasonable doubt the identity of the person who committed the crime (*Slim*, 127 Ill. 2d at 307, 537 N.E.2d at 319). On the one hand, Bolton gave the police a purportedly accurate description of the shooter minutes after the shooting occurred. He also testified that he again saw the shooter one week later loading a snow blower onto a red pickup truck, although he did not inform police detectives because he was afraid that the shooter recognized him. On the other hand, Steve Salamy testified at trial that the person who came into the grocery store to sell him the snow blower on the date Bolton saw the shooter was *not* the defendant and that the composite sketch of the shooter that was prepared by Bolton following the shooting was inaccurate in that the nose was different and the person who came into the store did not have a mustache. The trial court, in ruling on defendant's motion for judgment notwithstanding the verdict, even noted that "if the evidence were only Bolton and if you stopped the evidence at the end of the State's case, I would say [defense counsel] could make an argument that the evidence is very closely balanced."

While it is true that a positive identification by a single witness who had an ample opportunity to observe a crime is sufficient to support a conviction (*People v. Dunskus*, 282 Ill. App. 3d 912, 918-19, 668 N.E.2d 1138, 1143 (1996)), a conviction cannot be sustained beyond a reasonable doubt if the identification of the accused is vague or doubtful. *Ash*, 102 Ill. 2d at 494, 468 N.E.2d at 1156. And, in our view, Bolton's testimony was insufficient in light of Salamy's testimony. Therefore, Bolton's testimony alone does not support a finding of guilty in the present case. See *Ash*, 102 Ill. 2d at 494-95, 468 N.E.2d at 1156. Even so, our analysis is not complete, as the totality of the circumstances (*Cohoon*, 104 Ill. 2d at 300, 472 N.E.2d at 406) includes defendant's postarrest oral comment, the determining factor in both defendant's conviction and sentencing. Specifically, on direct examination, the following colloquy occurred between the State and ASA Gallagher:

"[THE STATE]: Did you ever have any conversation with the Defendant regarding the victim of this incident inside the store at the time of the shooting?

[GALLAGHER]: Yes, I did. I asked him whether or not he knew that the victim was holding a weapon, I got to that point in my question, he interjected and stated fake gun, which kind or surprised me, I sat back.

Q. When the Defendant stated fake gun, had anyone informed

the Defendant at that time that the victim was holding a fake gun at the time of the incident?

A. No, that was the first time it was mentioned.

Q. At the time the Defendant stated fake gun to you, can you describe how you were seated or how it was you were speaking with him at that time?

A. Similar to the way I'm situated now, with my hands down, maybe a little more comfortable.

Q. At the time that you spoke to him did you at any time as you were asking him, is it possible were you indicating, and for the record I'm pulling my index finger backwards and forwards, and holding my hands out. Were you doing this at all during the course of your conversation with the Defendant?

A. No, I was not.

Q. After the Defendant stated this item about a fake gun, did you question him as to why he said that to you?

A. Yes, I did, kind of curiously asked him why he said that and he indicated to me that he thought that's what I was about to say."

In light of ASA Gallagher's testimony, the State contends that the jury could have reasonably concluded that defendant observed Zayed holding a toy gun while defendant was shooting him to death, particularly where defendant conceded at trial that he interjected "fake gun" while ASA Gallagher was asking him whether he knew what the victim was holding at the time of the incident. In our view, however, there was no evidence corroborating the existence of a toy gun with defendant's statement. There is no testimony that Bolton ever informed the police detectives that a toy gun existed until after defendant's arrest, the crime scene investigators did not recover a toy gun from the scene of the shooting and ASA Gallagher never memorialized any statement or admission, oral or written, made by defendant regarding a fake gun in his felony review folder. In fact, during oral argument, the State conceded that information regarding the fake gun was included neither in any subsequent police reports nor by way of discovery pursuant to Rule 412 (134 Ill. 2d R. 412(a)(ii)). In our view, the lack of evidence specifically linking defendant to the crime raises a reasonable doubt that he was, in fact, the shooter Bolton described at the scene of the crime.

In contradistinction to the evidence presented by the State, defendant testified that: (1) on the day of the shooting, he went to church then went grocery shopping at the Omni Food Store on Fullerton Avenue with his mother for Thanksgiving dinner; (2) he had not been to Karlov Foods in at least 10 years; (3) he had never been in Pete and Jack's grocery store; and (4) the statement regarding the "fake" or "toy" gun was made to ASA Gallagher because he believed that was

what ASA Gallagher was about to say, as ASA Gallagher was gesturing with his hands at the time of the question. As a defense witness, defendant's employer, Haim Brody, further identified pay records indicating that defendant was at work on the day defendant was purportedly seen at Pete and Jack's grocery store. Even Salamy testified that the person who came into the grocery store to sell him the snow blower on the date Bolton saw the shooter was *not* the defendant, while Bolton continued to assert that he viewed the shooter at Pete and Jack's grocery store. Moreover, there was evidence that, on the day of the shooting, Zayed, who was involved in a legal dispute with his landlord, had gotten into an argument on the telephone with the landlord in the afternoon and that the landlord was a suspect in the investigation. No connection was discovered between the landlord and defendant.

The prosecution has the burden of proving beyond a reasonable doubt the identity of the person who committed the crime. 720 ILCS 5/3—1 (West 1996); *Slim*, 127 Ill. 2d at 307, 537 N.E.2d at 319. However, we cannot agree that it met its burden in this case. Accordingly, in our view, defendant was not proven guilty beyond a reasonable doubt where Bolton's testimony alone would not support a guilty verdict and where there is no other corroborative evidence linking defendant to the crime.

In light of the foregoing, the decision of the trial court is reversed.

Reversed.

McNULTY, J., concurs.

JUSTICE McBRIDE, specially concurring in part and dissenting in part:

I concur with the majority decision to reverse the jury's verdict in this case; however, I would remand this case for a new trial for the reasons that follow.

Initially, I agree with my colleagues that the defendant has not established he received ineffective assistance of counsel for the reasons set forth in the majority opinion. I do not agree with the majority's conclusion that the prosecution failed to prove defendant guilty beyond a reasonable doubt. Therefore, in my opinion, the defendant's conviction should not be reversed outright. However, because a number of prejudicial errors occurred during defendant's trial, I believe a new trial is warranted.

The specific errors I will address include: (1) the admission into evidence of an informant's out-of-court statements implicating the de-

fendant; (2) the introduction of hearsay testimony from one of the detectives used to improperly bolster a prior description of the offender made by Andrew Bolton, the only eyewitness to the offense; and (3) improper comments made by the prosecution in closing argument.

The portions of Detective Halvorsen's testimony defendant claims were erroneously allowed at his trial have been set out in the majority opinion and that testimony will not be repeated here. The rule generally prohibiting the use of prior consistent statements has also been set out in the body of the opinion and does not bear repeating. Further, the majority correctly notes that generally this rule does not apply to statements of identification. *People v. Beals*, 162 Ill. 2d 497, 507-08, 512 N.E.2d 1183 (1994). However, I take issue with the majority's apparent extension of the rule in this case which allows the introduction of hearsay testimony about a description of the offender from an unknown source on the basis that it relates to the identification of the accused. Further, I believe it was error to allow a police witness to compare that hearsay description of the offender with a prior out-of-court description of the offender that came from the only eyewitness. Additionally, it was error to allow that police officer to testify that the defendant was named as a suspect in this offense when there was no opportunity to cross-examine the source of the hearsay information. This is precisely what occurred at defendant's trial.

In the instant case, Andrew Bolton identified the defendant in open court and he also testified to viewing a photo array and a lineup wherein he identified the defendant. Subsequently, Detectives Halvorsen and Woodhall each testified, respectively, to the fact that Bolton identified the defendant from a photo spread and a lineup. This type of identification testimony is permissible under *Beals* and also the relevant statute. *Beals*, 162 Ill. 2d at 508; 725 ILCS 5\115—12 (West 1998). However, before testifying about Bolton's identification from the photo array, Halvorsen was allowed to testify that he received information that the name of a possible suspect for this offense was Angel Rodriguez. After securing a photograph of defendant, Halvorsen testified that he "checked" the physical description and the age of Angel Rodriguez. Halvorsen never actually said where he got the photo from or where the information regarding the defendant's description came from. Halvorsen noted, however, that the physical description and age he received from the undisclosed source were very similar to the physical description and age that Andrew Bolton previously provided to the police. This type of testimony, which was introduced over defendant's objection, is not permitted by the *Beals* decision. As the majority pointed out, the reasoning behind allowing certain statements of identification is the following:

"If a witness testifies that he previously identified an offender and the witness' veracity has been tested on cross-examination, a third person may then testify that he heard or saw the witness previously identify the offender. The third person's corroborative testimony is considered reliable, and therefore admissible, because both the witness and the third person are subject to cross-examination ***." *Beals,* 162 Ill. 2d at 508.

In my opinion, the testimony of Halvorsen went well beyond the boundaries of *Beals* because there was no opportunity to cross-examine the source of the hearsay information. Halvorsen also testified that, armed with this information, the physical description and age of the suspect Angel Rodriguez, he went out and observed defendant on the street. Halvorsen then told the jury that defendant matched "the height, weight and description Andrew Bolton had given on the day of the murder." This, in my opinion, was improper not only because of the hearsay information contained in Halvorsen's statements but because it improperly bolstered the credibility of a crucial state witness.

The State argues and the majority points out that the source of Halvorsen's information was somewhat vague and says "Halvorsen never testified to the substance of the conversation with the informant." 312 Ill. App. 3d at 929. Although I agree that the source of Halvorsen's information was vague, (*i.e.,* did it come from an informant, did it come from a previous arrest report, or did it come from some other unidentified source), in my opinion the detective did testify to the substance of some conversation. Again, this is demonstrated by Halvorsen's testimony that Rodriguez was named a suspect in this shooting. Halvorsen was also permitted to testify that the physical description and age of the suspect Rodriguez were very similar to the physical description and age of the offender that Andrew Bolton previously described to the police. Thus, the substance of some hearsay conversation, the name of the suspect, the physical description and age were unquestionably revealed by his testimony. The jury could also infer that this same information, the other description (not Bolton's), was then used by Halvorsen to compare it with Bolton's initial description of the offender. Not only was this comparison of the descriptions an improper bolstering of Bolton's prior description of defendant, there was no opportunity to cross-examine the reliability or the source of the hearsay information provided to Halvorsen.

The majority seems to suggest that since this testimony was offered, not for the truth of the matter asserted, but for the limited purpose of explaining the reason the police conducted their investigation, the testimony was therefore not objectionable. *People v. Sanders,*

80 Ill. App. 3d 809, 400 N.E.2d 468 (1980); *People v. Sims*, 285 Ill. App. 3d 598, 673 N.E.2d 1119 (1996). Again, I respectfully disagree. Although, it would have been permissible to allow Halvorsen to say he had a conversation with someone and that as a result of that conversation he secured a photograph of Rodriguez. This would explain the course of his investigation leading up to the photo identification and would contain information based upon Halvorsen's personal knowledge. It was error to allow the introduction of testimony regarding the substance of that conversation and that is what I believe occurred here.

*Sanders*, cited by the majority, is distinguishable for several reasons. First, in *Sanders* the court concluded that the issue of hearsay was waived because of the defendant's failure to object. Second, in that case, the complained-of statements were given to the detective by the victim; however, the detective and victim both testified at trial and were subject to cross-examination. Third, the *Sanders* court found the statements were not offered to show the truth of the matter asserted in the statements. It should also be pointed out that *Sanders* does not fully state the rule regarding the police investigatory exception. *Sanders*, 80 Ill. App. 3d at 814.

*Sims*, on the other hand, sets out the rule, which provides that in order to establish a course of conduct, a police officer may testify that he had a conversation with an individual and that he subsequently acted on the information received. "The officer cannot, however, testify as to the substance of the conversation with the individual because that would be inadmissible hearsay." *Sims*, 285 Ill. App. 3d at 608; *People v. Gacho*, 122 Ill. 2d 221, 248, 522 N.E.2d 1146 (1988).

In my opinion, it was error to permit Halvorsen to testify that he received information naming Angel Rodriguez as a suspect in the shooting. It was also error to allow Halvorsen to testify that he "checked" the physical description and age of the suspect, Angel Rodriguez, which clearly came from some undisclosed source. Then, over the defendant's renewed objection, the detective testified that the information about Rodriguez' physical description and age, which came from an undisclosed source, matched the physical description and age Bolton had given to police on an earlier date.

I believe the testimony of Halvorsen amounted to an out-of-court identification of defendant, albeit from an unknown source. An out-of-court identification of the accused by people who cannot be cross-examined is error and the prejudice is palpable. *People v. Rivera*, 277 Ill. App. 3d 811, 819, 661 N.E.2d 429 (1996); see also *People v. Singletary*, 273 Ill. App. 3d 1076, 652 N.E.2d 1333 (1995) (undisclosed confidential informant gave police defendant's first name and ad-

dress); *People v. Johnson*, 202 Ill. App. 3d 417, 559 N.E.2d 1041 (1990) (unknown men identified defendant as someone who ran from the scene of a burglary).

Even though Halvorsen never specifically identified the source of his information, he was allowed to tell the jury that information he received named defendant as a suspect for this offense. "Hearsay testimony identifying the defendant as the one who committed the crime cannot be explained away as 'police procedure,' even where the trial judge limits the evidence to a nonhearsay purpose." *Rivera*, 277 Ill. App. 3d at 820. In this case there was a defense objection to Halvorsen's testimony but those objections were overruled. Moreover, no limiting instruction was given. Instead the jury heard the hearsay testimony without any limitation.

Additionally, I do not agree that the testimony offered by the State through the detective was offered to show the course of the police investigation. In my opinion, it was used to prove that Angel Rodriguez was the offender and it was used to bolster the previous description of defendant by Andrew Bolton, the only eyewitness to the shooting. The purpose of using this information was further demonstrated by the following comments made by the assistant State's Attorney in his closing argument:

> "[T]hey [the police] don't know who the offender is, but, in March of '97 they get a break, they get some information about who the offender is and Detective Halvorsen orders a photo of the Defendant ***. He's placed into a lineup and Andrew Bolton comes down and identifies the Defendant again in the lineup ***."

These comments are a direct reference to the hearsay information Halvorsen received from an undisclosed source that identified defendant as a suspect for this offense. Again, as previously pointed out, the exception that allows a police officer to testify about steps taken in an investigation does not allow for the introduction of otherwise hearsay conversations with those who cannot be cross-examined. *Sims*, 285 Ill. App. 3d at 608.

Citing *People v. Montgomery*, 254 Ill. App. 3d 782, 626 N.E.2d 1254 (1993), the State argues the testimony regarding Bolton's previous description of the offender was proper because of the defense suggestion of recent fabrication. Alternatively, the State suggests that the prior consistent statements of the witness could be introduced because of the defense claim that the offer of a $5,000 reward provided Bolton with a motive to testify falsely. *Montgomery* allows for the use of a prior consistent statement on the subject matter at issue where there is a suggestion of recent fabrication by the witness or a motive to testify falsely has been demonstrated. Although *Montgomery* is ac-

curately cited for this general proposition, I cannot see how that rule would permit Halvorsen to testify about the information he received from an unknown source who was not subject to cross-examination. *Montgomery*, 254 Ill. App. 3d at 792.

What was improper about Halvorsen's testimony was not the introduction of Bolton's previous out-of-court description of the offender but using it with other hearsay information from this unknown source to bolster the testimony of the only eyewitness to the shooting. This other description provided by someone who did not testify and who could not be cross-examined is not permissible under the *Montgomery* case. Similarly, the naming of Angel Rodriguez as a suspect in this shooting by someone who did not testify and who could not be cross-examined is not permissible under *Montgomery* either, regardless of a claim of recent fabrication or an established motive to testify falsely. Therefore it was error to allow any of the testimony that came from the unknown source.

The remaining question is whether the introduction of this testimony was reversible error.

The defendant claims the introduction of the hearsay testimony, coupled with additional errors, the use of the mug shot, the mention of defendant's arrest on an unrelated warrant, and improper use of the hearsay testimony in closing arguments, requires the reversal of defendant's conviction. The State responds that, if the introduction of the testimony was error, it was harmless because the defendant would have been found guilty without the evidence. The State's analysis of this error does not go far enough, for evidentiary errors can be considered harmless only if the properly admitted evidence is so overwhelming that no fair-minded jury could reasonably have voted to acquit the defendant. *Singletary*, 273 Ill. App. 3d at 1086.

Additionally, the admission of hearsay identification testimony is reversible error when it is used as a substitute for courtroom identification or is introduced to strengthen or corroborate a weak identification. On the other hand, if the testimony is merely cumulative or supported by a positive identification and other corroborative circumstances it is considered harmless. *People v. Johnson*, 68 Ill. App. 3d 836, 842, 386 N.E.2d 642 (1979); *People v. Johnson*, 202 Ill. App. 3d 417, 426, 559 N.E.2d 1041 (1990).

Although it is my opinion that the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt, I cannot say the evidence was so overwhelming that no fair-minded jury could have voted to acquit defendant. To reach this conclusion, I adopt the majority's discussion of the testimony presented at defendant's trial for the sole purpose of demonstrating that the evidence was not overwhelming and indeed closely balanced.

Because the evidence was closely balanced, and because the introduction of a hearsay identification and a hearsay description were improperly used by the State in both the presentation of its case and in closing argument, it is my opinion that the defendant was denied a fair trial. *Johnson*, 68 Ill. App. 3d at 843.

Furthermore, in my opinion, Halvorsen's testimony regarding the naming of Rodriguez as a suspect, the hearsay description of defendant from an unknown source and the comparison of this description with Bolton's previous description were not only substitutes for a courtroom identification but were also used to strengthen Bolton's identification. Moreover, this hearsay testimony went to the very heart of the dispute, whether the defendant was the person who committed the crime. Accordingly, I would reverse defendant's conviction and remand this matter for a new trial.

Finally, I respectfully dissent from that portion of the opinion reversing defendant's conviction based upon the majority's conclusion that the State failed to prove defendant guilty beyond a reasonable doubt. I do so, because I believe that the majority has reweighed the evidence. In my opinion, after viewing all of the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Young*, 128 Ill. 2d 1, 48-49, 538 N.E.2d 461 (1989); see also *People v. Harre*, 155 Ill. 2d 392, 397-98, 614 N.E.2d 1235 (1993) (holding a court of review may not reverse a jury's guilty verdict unless the evidence, viewed in the light most favorable to the State, was so palpably contrary to the verdict, so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt).

I concur with the majority opinion in all other respects regarding other errors raised by defendant except those I have specifically detailed in this dissent.