2026 IL App (1st) 240100-U

No. 1-24-0100

Order filed March 12, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 821 |
| | ) | |
| EDDIE LONDON, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Navarro and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's convictions for first degree murder and possession of a stolen motor vehicle are affirmed where the evidence was sufficient to prove his guilt.

¶ 2    Following a bench trial, defendant Eddie London was found guilty of first degree murder and possession of a stolen motor vehicle. He was sentenced to concurrent prison terms of 30 years and 5 years, respectively. On appeal, he argues that the evidence was insufficient to prove his guilt

of either offense beyond a reasonable doubt because the victim's statements identifying him, made before the victim died, were unreliable and uncorroborated. We affirm.

¶ 3    London was charged by indictment with two counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2020)) alleging that, without lawful justification, he struck and killed Dominique Boone with a motor vehicle intentionally or knowingly (count I) and knowing that such act created a strong probability of death or great bodily harm (count II). London was also charged with possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2020)) alleging that he knew the vehicle to be stolen or converted (count III).

¶ 4    Prior to trial, the State filed a motion to admit statements and other-crimes evidence. The State requested the admission of testimony from five witnesses who would state that, before Boone died, she told them that London struck her with a vehicle. See Ill. Rs. Evid. 803(2) (eff. Sept. 28, 2018), 804(b)(2) (eff. Jan. 1, 2011) (hearsay exceptions for excited utterance and statement made under belief of impending death). The State also sought the admission of an emergency order of protection that Boone obtained against London on July 16, 2020, arguing that it was admissible to show London's motive and intent.

¶ 5    London filed a motion *in limine* requesting, *inter alia*, that the State be precluded from admitting Boone's statements where no hearsay exception applied.

¶ 6    Following a hearing, the trial court allowed the testimony of three witnesses regarding Boone's statement. The court also allowed the admission of the emergency order of protection for "the weight that [the court felt] that it deserved," which was "very limited."

¶ 7    At trial, Kenyotta Boone, Boone's sister, testified that in July 2020 Boone worked at SCR Medical Transportation (SCR). (Because Kenyotta Boone shares the same last name as the victim,

we refer to Kenyotta by her first name.) Boone and London, whom Kenyotta identified in court, were in a relationship for a "couple months," and Boone obtained an emergency order of protection against London on July 16, 2020.

¶ 8     Michael Zuniga, a claims manager at SCR, testified that Boone had worked as a driver for SCR for three years. London, whom he identified in court, had previously worked at SCR but was not employed there on July 29, 2020. Zuniga did not testify to when London was last employed by SCR.

¶ 9     Alexander Persu, a call center manager at SCR, testified that the vehicles used at SCR had interior and exterior video cameras. There were also surveillance cameras outside of the SCR building.

¶ 10    Persu testified that SCR vehicles were stored in a gated parking lot inside the premises. On the night of July 29, 2020, one of the vehicles, van 3109, was missing. London, whom Persu identified in court, was not authorized to operate a SCR vehicle on that date.

¶ 11    The State published video footage from van 3109, which was admitted at trial. The footage comprises two frames that play simultaneously in split-screen; one frame shows video filmed by the interior camera and the other frame shows video filmed by the exterior camera.

¶ 12    The footage was provided on appeal and this court has viewed it. In the footage, the frame depicting video from the interior camera is obstructed and no picture is seen. (Persu testified that this camera would usually depict the driver.) The frame depicting video from the exterior camera shows the vehicle driving on the street alongside the SCR building and stopping near the entrance for slightly over a minute. A woman exits the building and walks along the street. The vehicle accelerates and swerves toward her. She looks toward the vehicle as it swerves toward her, then

turns to run across the street as she is run over. The incident lasts three seconds. The vehicle leaves the scene and continues driving for nearly a minute before stopping in a residential area. A man, wearing a white shirt and dark-colored pants, exits the vehicle from the front driver's side, tosses something onto the sidewalk, and walks down the sidewalk. The man then runs back and turns into an alley located to the left of the vehicle.

¶ 13    The State also published surveillance footage from the SCR building, which was admitted at trial. The footage was provided on appeal and this court has viewed it. The camera points toward the middle of the street running alongside the entrance of the SCR building. In the footage, a woman walks along the street. A white van comes from the opposite direction, runs her over, and continues driving. The woman lays in the street and a few moments later, multiple individuals respond to aid her until the fire department arrives.

¶ 14    Brandon Cannon, a driver coordinator supervisor at SCR, testified that on July 29, 2020, he was working the 3 p.m. to 11:30 p.m. shift. That evening, he received a call from dispatch, exited the SCR building, and observed Boone on the ground. She was bleeding from her leg, and her chest was swollen. Boone told Cannon, "Eddie did it."

¶ 15    Cannon testified that Kanisha Roberson was assigned to van 3109 on the morning of July 29, 2020, and had parked the van on the premises after she returned around 4 or 5 p.m. that day. No one else was authorized to operate the van that evening. Cannon was present when the fire department and ambulance arrived.

¶ 16    On cross-examination, Cannon stated that he "physically" observed Roberson park the van. He remembered this because van 3109 was missing after the incident and Cannon verified in the computer system who was assigned the van. After vehicles were returned to the lot, the employees

left the vehicles unlocked so that other individuals could wash and clean the vehicles prior to next use.

¶ 17    Tomika Stewart, a security guard at SCR, testified that the company's work uniform was a white button down shirt, blue pants, and black shoes. On July 29, 2020, Stewart was a driver and worked an 11:15 a.m. to 9:45 p.m. shift. Stewart was driving back to the SCR building after her shift when she saw another SCR van driving at "a high speed" with no lights on. When Stewart turned onto the street that the other van came from, she observed Boone laying in the street. Boone's left leg was cut and the bone was exposed. Stewart stayed with Boone until paramedics arrived.

¶ 18    Chicago Fire Department lieutenant Romeo King testified that on July 29, 2020, he responded to the scene and observed Boone laying on the street. Boone had a crushed pelvis, chest trauma, and severe injuries "pretty much all over her body." Boone stated that "her boyfriend, Eddie London, ran her over." Boone was transported to the University of Chicago hospital where she died from her injuries.

¶ 19    On cross-examination, King testified that the general report he generated omitted Boone's statement implicating London, but the EMS report generated by the paramedic would include more detail.

¶ 20    Dr. Ponni Arunkumar, chief medical examiner at the Cook County Medical Examiner's Office, testified that she reviewed the report of the autopsy performed on Boone and noted that the internal and external examinations of Boone's body exhibited multiple injuries. Dr. Arunkumar concluded that Boone's cause of death was multiple blunt force trauma due to being struck by a motor vehicle and the manner of death was homicide.

¶ 21    Chicago police detective David Cavazos testified that London was arrested in Lebanon, Indiana, pursuant to a warrant. Cavazos learned from arresting officers that London's personal vehicle was recovered, and Cavazos obtained a warrant to search the vehicle. From the vehicle, Cavazos recovered proof of ownership of the vehicle, documents pertaining to London, blue work pants, black gym shoes, surgical masks, a pair of black latex gloves, and a pair of white gloves.

¶ 22    Chicago police officer John Kill testified that on July 30, 2020, at around 1 a.m., he located an SCR van bearing number 3109 "a couple blocks" from the scene of the incident.

¶ 23    Chicago police officer Kamal Judeh testified that he processed the van and found cracks on the driver's side lower bumper, the "rear driver [side] of the vehicle," and the rear bumper.

¶ 24    Chicago police detective Douglas Livingstone testified that a fingerprint was recovered from the inside of the van's driver's side door window. Also recovered was a piece of black tape, which was covering the lens of the interior camera pointed toward the cabin of the van.

¶ 25    Chicago police sergeant Patrick Kenah testified that he found a mask on the sidewalk half a block south of the van and gloves in an alley 30 feet south of the van.

¶ 26    Carl Weatherspoon, an investigator for the Cook County State's Attorney's Office, testified that he took a buccal swab from London.

¶ 27    Jennifer Bell-Schoon, a forensic science administrator at the Illinois State Police Crime Lab, testified that the DNA profile identified from London's buccal swab was compared to major male DNA profiles found on the face mask and gloves. According to Schoon, London "could not be excluded" from either, "which is a positive association so he was included." Regarding the mask, Bell-Schoon stated that "[a]pproximately 1 in 51 octillion unrelated individuals could [*sic*] be excluded from having contributed to that profile." Regarding the gloves, Bell-Schoon stated

that "[a]pproximately 1 in 93 septillion unrelated individuals can [*sic*] be excluded from having contributed to that profile."

¶ 28    Bell-Schoon testified that DNA analyses of swabs taken from the interior driver compartment of the vehicle and the black tape were inconclusive, and therefore, London's DNA was not compared to the vehicle interior swabs or the tape.

¶ 29    On cross-examination, Bell-Schoon testified that DNA could transfer from one surface or object onto another.

¶ 30    Cynthia Prus, a forensic scientist at the Illinois State Police Forensic Science Center, testified that the fingerprint lift recovered from the van was not "suitable for comparison."

¶ 31    The court found London not guilty of count I for (intentional) first degree murder and guilty of count II for (strong probability) first degree murder and count III for possession of a stolen motor vehicle. In ruling, the court found that the "key evidence" was the video from the van, which depicted the van parked for a "long time waiting for someone," hitting Boone "at a very fast speed," and continuing to drive, suggesting that the driver intended to hit Boone. Moreover, the court noted that the fact that London's "DNA was found both on the mask and the gloves suggests *** that Mr. London was in fact the driver of the van," which he did not have permission to operate given that he no longer worked at SCR. Lastly, the tape over the interior camera went "to the issue of intent."

¶ 32    London filed a motion for a new trial, arguing that the State failed to prove him guilty beyond a reasonable doubt. At a hearing on the motion, defense counsel also argued that the court should change its ruling from first degree murder to reckless homicide. The court denied the motion, noting that London disabled the van's interior camera and "sat there, waited until [Boone]

left work, ran her over, did not render aid at all, drove a short distance away, [and] discarded the mask and gloves that he was wearing on the ground," proving that he "intended to *** cause great bodily harm."

¶ 33    London was subsequently sentenced to concurrent prison terms of 30 years for murder and 5 years for possession of a stolen motor vehicle.

¶ 34    On appeal, London argues that the evidence was insufficient to prove his guilt beyond a reasonable doubt because Boone's statements identifying him were unreliable and uncorroborated.

¶ 35    On a challenge to the sufficiency of the evidence, the relevant inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will not retry the defendant. *People v. Nere*, 2018 IL 122566, ¶ 69. The trier of fact's role is to "assess the credibility of the witnesses, weigh the evidence presented, resolve conflicts in the evidence, and draw reasonable inferences from the evidence." *People v. Daniel*, 2022 IL App (1st) 182604, ¶ 102. A reviewing court will not substitute its judgment for that of the trier of fact as to those issues. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009).

¶ 36    The trier of fact need not "disregard inferences that flow normally from the evidence before it" or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70. Therefore, we "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Givens*, 237 Ill. 2d 311, 334 (2010). A conviction will not be set aside unless "the evidence is so unreasonable,

improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 37 To prove London guilty of first degree murder, the State needed to prove that he struck and killed Boone knowing that "such act[ ] create[d] a strong probability of death or great bodily harm to" Boone. 720 ILCS 5/9-1(a)(2) (West 2020). To prove London guilty of possession of a stolen motor vehicle, the State needed to prove that he was in possession of the SCR van knowing it to be stolen or converted. 625 ILCS 5/4-103(a)(1) (West 2020). The State must prove beyond a reasonable doubt the identity of the person who committed the crimes. *People v. Tomei*, 2013 IL App (1st) 112632, ¶ 36. A single eyewitness's identification of the accused is sufficient to sustain a conviction provided the identification is reliable. *Id.* ¶¶ 36-37.

¶ 38 In this case, Boone identified London by name to different people on scene as the person who struck her with the van. Video from the van showed Boone looking toward the van and the driver swerving toward and striking Boone. It showed the driver then driving away, exiting the van, dropping something onto the sidewalk, and entering an alley near the vehicle. London's DNA profile had a "positive association" with the profile from a mask found on the sidewalk close to the abandoned van and gloves found in a nearby alley. Evidence also established that Boone had an order of protection against London, her ex-boyfriend, and that London formerly worked at SCR but was not employed there on the date of the incident and was not authorized to operate the van. Construing the evidence in the light most favorable to the State, it was reasonable for the trier of fact to infer that London stole the van and struck and killed Boone with the vehicle. See *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (all reasonable inferences are viewed in the light most favorable to the prosecution).

¶ 39    London nevertheless argues that the evidence was insufficient to prove either offense because Boone's brief opportunity to view the driver and her prior relationship with London increased the possibility of misidentification, and other evidence failed to corroborate the identification.

¶ 40    Courts rely on the factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972), to determine the reliability of an identification. These include: (1) the witness's opportunity to view the offender during the offense; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the witness's level of certainty at the time of the identification procedure; and (5) the length of time between the offense and identification. *Tomei*, 2013 IL App (1st) 112632, ¶ 37. "None of these factors, standing alone, conclusively establishes the reliability of identification testimony; rather, the trier of fact is to take all of the factors into consideration." *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 47. While "a positive identification by a single witness who had an ample opportunity to observe a crime is sufficient to support a conviction, a conviction cannot be sustained beyond a reasonable doubt if the identification of the accused is vague or doubtful." (Internal citations omitted.) *People v. Rodriguez*, 312 Ill. App. 3d 920, 934 (2000).

¶ 41    Here, immediately after Boone was run over, she told multiple witnesses that London struck her. Boone knew London well, no witness testified that Boone seemed uncertain in her identification, and the time that elapsed between the incident and Boone's identifying statements was brief. Thus, those *Biggers* factors weigh in favor of the accuracy of her identification of London. On the other hand, although the video shows Boone looking toward the van, her opportunity to view the driver and her degree of attention to the driver rather than the van is unclear.

¶ 42    Looking beyond the *Biggers* factors, however, the State presented ample evidence to corroborate Boone's identification of London as the driver of the stolen van. As noted, London's DNA profile had a "positive association" with the profile found on the mask and gloves found near the abandoned van. Further, similar items, including a surgical mask and black latex gloves, were found in London's personal vehicle, along with blue work pants like those that were part of the SCR uniform. Video evidence showed that the driver of the stolen van was wearing a white shirt and dark-colored pants. Given this evidence, it was reasonable for the trial court to conclude that London struck and killed Boone with the van. Thus, taking all of the evidence together, the State proved London's guilt of first degree murder and possession of a stolen motor vehicle beyond a reasonable doubt.

¶ 43    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 44    Affirmed.